## SNODGRASS ET AL. *v.* BRANDENBURG.

[No. 20,355.    Filed June 3, 1904.    Rehearing denied January 3, 1905.]

1. WILLS. — *Construction.* — *Estates Created.* — A will providing in clause two: "I bequeath my entire estate, both real and personal, to my beloved wife," and in clause four: "I request that at the death of my wife, that my estate that I am now seized of, be equally divided between my children," devises a fee-simple title to such wife. p. 60.

2. SAME.—*Estate Devised.*—*Use of Word "Heirs."*—The use of the word "heirs" is not required, even in the absence of statute, to convey a fee simple by will.    p. 62.

3. SAME.—*Bequest of Real and Personal Estate.*—*Presumption.*—At the common law it is not necessary to add words of inheritance to a bequest of personal property in order to convey a transmissible interest, and where a testator has coupled his real with his personal property, the presumption is that he intended to convey as great a right in the one as in the other.    p. 62.

4. SAME.—*Construction.*—*Cutting Down Estate by Subsequent Clause.*—A devise in fee can not be cut down nor modified by a subsequent clause which does not clearly and distinctly manifest the testator's intention to limit such devise.    p. 63.

5. SAME.—*Construction.*—*Precatory Words.*—Where a fee is devised by the terms of a will, a subsequent precatory clause can not cut such fee down to an inferior estate.    p. 63.

6. SAME.—*Construction.*—*Cutting Down Estate.*—*"Request."*—Where a husband devised to his wife a fee, and in a subsequent clause stated: "I request that at the death of my wife," the estate should go to their children, such clause did not limit such fee.    p. 64.

7. SAME.—*Construction.*—*Subsequent Clause Cutting Down Estate.*—Where a clause in a will, in terms which, standing alone, are clear, unambiguous, liable to no doubt, clouded by no obscurity, about which no one could entertain a doubt, devises a certain estate, a subsequent clause, in order to reverse that opinion, must be decisive the other way.    p. 68.

From Shelby Circuit Court; *Douglas Morris,* Judge.

Action by Napoleon B. Brandenburg against Dollie Snodgrass and others to quiet title.    From a decree for plaintiff, defendants appeal.    Transferred from the Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*K. M. Hord, Ed. K. Adams, Jonas P. Walker* and *Elmer J. Binford,* for appellants.

*Albert F. Wray, Thomas H. Campbell, James F. Reed, Ephraim Marsh* and *William W. Cook,* for appellee.

GILLETT, J.—Appellee instituted this action against appellants to quiet title to certain real estate. An answer and a cross-complaint were filed by appellants, both of which were adjudged insufficient on demurrer.

1. The pleadings present the question as to whether the duly probated will of William Snodgrass, deceased, gave to his widow, Sarah Snodgrass, a fee-simple title to his real estate. If so, the rulings mentioned were improper, and the cause should be reversed because of such rulings. The second, third and fourth clauses of said will afford a sufficient understanding as to the character of the instrument. Said clauses are respectively as follows: "(2) I bequeath my entire estate, both real and personal, to my beloved wife, Sarah Snodgrass. (3) I request that as soon as convenient after my death, that my wife shall sell the personal property sufficient to pay my entire indebtedness. (4) I request that at the death of my wife, that my estate that I am now seized of, be equally divided between my children, to wit, John C., Mary A., Cora M., and Dora Snodgrass."

In determining whether a fee vests in the first taker, all of the relevant provisions of the will are to be considered. When the conclusion is finally reached, after an inspection of the four corners of the will, that it was the intent of the testator to vest a fee in the first instance, then any subsequent attempt to impose a legal estate thereon must necessarily fail, as inconsistent with the estate first devised. In this case the second clause, standing alone, plainly indicates, as a matter of interpretation, that it was the testator's purpose to devise a fee to his wife. A case might be conceived of, however, where, notwithstanding such lan-

guage, there was a subsequent provision so cogent as to lead the court to conclude that it was the intention of the testator to limit the interest of the first taker to a life estate. *Mulvane* v. *Rude* (1896), 146 Ind. 476, and cases cited; *Lumpkin* v. *Rodgers* (1900), 155 Ind. 285; *Fenstermaker* v. *Holman* (1902), 158 Ind. 71. The case last cited furnishes an apt illustration of an instance where the subsequent words were so clear and decisive as to rebut the implication which a prior clause had created of an intent thereby to devise the fee.

In the final disposition of this case we start with the proposition that clause two was sufficient, when standing alone, clearly to evince the intent of the testator to devise a fee. Segregated from the other clauses of the will, we think that it may be said that the intent to devise a fee to the widow is clearly and decisively shown, and, that being true, the provision made by said clause was not subject to be taken away or cut down by the words of a subsequent clause, unless the latter clearly and distinctly rebuts the implication arising from the former clause. In the will under consideration the testator but requested that at the death of his wife his estate should be divided. At the utmost, the fourth clause of the will only served to create a doubt as to whether it was the testator's intention to limit the second clause, and in such circumstances the subsequent clause is ineffectual.

Judgment reversed, with a direction to the trial court to overrule the demurrer to the answer and the demurrer to the cross-complaint.

## On Petition for Rehearing.

Gillett, J.—Appellee's counsel have filed a petition for a rehearing herein, together with a brief in support of their petition. We have carefully considered the brief, and have made an independent and an exhaustive examination of the authorities, preparatory to passing on the petition.

2. Our statute provides "that every devise in terms denoting the testator's intention to devise his entire interest in all his real or personal property, shall be construed to pass all the estate in such property." §2737 Burns 1901, §2567 R. S. 1881. The devise found in the second clause of the will in question is couched in words which approximate the provisions of the statute, even if the language is not "in terms" that which the enactment contains. See *Korf* v. *Gerichs* (1896), 145 Ind. 134. However, the word "heirs" is not required, even in the absence of statute, to convey a fee by will. Other words denoting the intention may be employed. Kent states that a "devise of *all my estate, all my interest, all my property, my whole remainder, all I am worth or own, all my right, all my title,* or *all I shall die possessed of,* and many other expressions of like import, will carry an estate of inheritance, if there is nothing in the other parts of the will to limit or control the operation of the words." 4 Kent's Comm. (13th ed.), *535. A well-known writer on the law of wills says: "The word 'estate' is a general term, and in modern construction may be said to embrace *prima facie* the whole estate of the testator, both real and personal, and his property of every description." Schouler, Wills (3d ed.), §510. We have before us a case where the testator not only used the word "estate," in describing what he desired to pass by will to his wife, but where he gave it the broadest meaning, since he used the words "my entire estate, both real and personal." This is comprehensive, not circumscriptive, language.

3. At common law, words of inheritance were not required to bequeath the entire title to personal property, and it is a rule of construction that, where a testator has classed his real property with his personal property, the presumption is that he intended to convey as ample a right in the one as in the other. *Mulvane* v. *Rude* (1896), 146 Ind. 476, and cases there cited.

4.  Having ascertained that the words of the second clause, when standing alone, are clearly sufficient to indicate the intent of the testator to devise a fee to his wife, the question arises whether the subsequent, and not immediately connected, language, found in the fourth item of the will, was sufficient to denote his intention to limit her interest in the real property to a life estate.  In *Mulvane* v. *Rude, supra,* this court said: "It is thoroughly settled that a devise in fee clearly and distinctly made, or necessarily implied, can not be cut down or modified by subsequent provisions not clearly and distinctly manifesting the testator's intention to limit such devise." The authorities clearly vindicate this statement of the law.  See, in addition to the cases cited in support of the proposition in the *Mulvane* v. *Rude* case, *supra, Ross* v. *Ross* (1893), 135 Ind. 367; *Rogers* v. *Winklespleck* (1896), 143 Ind. 373; *Helmer* v. *Shoemaker* (1839), 22 Wend. 137; *Barrett* v. *Marsh* (1879), 126 Mass. 213; *Halliday* v. *Stickler* (1889), 78 Iowa 388, 43 N. W. 228; *Bills* v. *Bills* (1890), 80 Iowa 269, 45 N. W. 748, 20 Am. St. 418, 8 L. R. A. 696, and cases cited; *Benz* v. *Fabian* (1896), 54 N. J. Eq. 615, 35 Atl. 760; *McKenzie's Appeal* (1874), 41 Conn. 607, 19 Am. Rep. 525; *Jones* v. *Jones* (1872), 25 Mich. 401; *Davis* v. *Boggs* (1870), 20 Ohio St. 550; *Bradley* v. *Carnes* (1894), 94 Tenn. 27, 27 S. W. 1007, 45 Am. St. 696.

5.  If it be admitted that the second clause was sufficient, standing alone, clearly and decisively to evince the purpose of the testator to give his wife a fee, we are unable to perceive how it can be seriously contended that the request in the fourth clause, that at her death the estate of which the testator was "seized" should be "equally divided" between his children, can be said clearly and distinctly to rebut the provision of the former clause with respect to the remainder interest.  It is pointed out in Anderson's Law Dictionary that, in usage, there is a difference in intensity between

"request" and "require," the latter being nearer a command. It was said of old time that "the wish of a testator, like the request of a sovereign, is equivalent to a command," and on this ground the English courts were formerly disposed to seize upon such expressions as amounting to grants of definitive rights—a tendency that is frowned upon by the modern authorities. *Lamb* v. *Eames* (1870), L. R. 10 Eq. 267; *In re Hutchinson* (1878), 8 Ch. D. 540; 2 Story, Eq. Jurisp. (13th ed.), §1069; *Fullenwider* v. *Watson* (1887), 113 Ind. 18, and cases cited; *Mitchell* v. *Mitchell* (1895), 143 Ind. 113; *Allen* v. *McGee* (1902), 158 Ind. 465. These questions usually arose where there had been a general devise to a particular person, and the testator had added words of a precatory character, and it was to be determined whether the subsequent language was intended to be mandatory or whether it was his purpose to give the person first mentioned full discretion. In this case, however, there was no direct charge laid upon the conscience of the first taker. For aught that appears, the testator merely sought to express a desire that upon the death of his wife his real estate should descend from her to his children.

6. In nearly all of the cases in which the effect of the word "request" has been discussed, it is stated that its precise meaning must depend upon the circumstances in which it is employed. As between the wife of a man's bosom and his children, it can not be said, in the absence of any direction, that his desire will be best conserved by his widow taking an estate in fee, or by her interest being limited to a life estate and his children taking the remainder. In a case like the one before us, where the prior clause is sufficient, standing alone, clearly to indicate an intent to give the wife a fee, and the request is not laid upon her directly, a court could have no ground of assurance that the testator did not wittingly employ the word "request," not with a purpose of varying the legal effect of the language

Snodgrass v. Brandenburg.

employed in creating the devise in her favor, but in expressing the natural desire that the real estate should remain in her hands to be inherited by their children. In a case of this kind, we think we are far within the authorities in holding that the language of the second clause was not cut down by words which, in the circumstances in which they were employed, were at most but sufficient to raise a doubt as to the testator's intent. While every case involving the construction of a will must largely depend upon its own particular words, yet where a testator devises an estate to his widow in language which, under settled rules of construction, clearly amounts to a grant of the fee, mere precatory words, subsequently used, evincing the desire of the testator that his children should enjoy the estate upon her death, are not sufficient to limit the force of the prior language.

In *Good* v. *Fichthorn* (1891), 144 Pa. St. 287, 27 Am. St. 630, the court, after stating the facts involved in the case, said: "Did this clause reduce the fee previously given to a life estate as to the unconsumed residue? That such effect may be produced is admitted, but the presumption is against it. The rule is well expressed by Strong, J., in *Sheets' Estate* [1866], 52 Pa. St. 257, thus:- 'If a testator give an estate of inheritance, and in subsequent passages unequivocally shows that he means the devisee to take a lesser interest only, the prior gift is restricted accordingly.' As it must unequivocally appear that the testator meant to limit the estate, it has been uniformly held that no merely precatory words will be sufficient."

In *Bills* v. *Bills, supra,* the supreme court of Iowa declared its view of the law thus: "When there is an absolute or unlimited devise or bequest of property, a subsequent clause expressing a wish, desire or direction for its disposition after the death of the devisee or legatee will not defeat the devise or bequest, nor limit the estate or interest in the

property, to the right to possess and use during the life of the devisee or legatee. The absolute devise or bequest stands, and the other clause is to be regarded as presenting precatory language. The will must be interpreted to invest in the devisee or legatee the fee simple title of the land, and the absolute property in the subject of the bequest."

It was said in *Taylor* v. *Brown* (1895), 88 Me. 56, 33 Atl. 664, that the general rule we have referred to "sometimes operates harshly, no doubt, in defeating the real intention of testators; but it is a safer rule than one which, for want of strictness, would be attended in its application with all sorts and shades of doubt and uncertainty." And the court added: "However strong the language of recommendation or request may be, a trust will not be implied if such a construction of the words will be repugnant to, or inconsistent with, other parts of the same will, as by cutting down an absolute estate, first clearly given, to an estate for life."

In a case which arose in Massachusetts *(Barrett* v. *Marsh* (1879), 126 Mass. 213), a will contained, in substance, the following provisions: (1) I give my wife all the furniture and house situate in B. (2) I give my wife one-half of my other real and personal estate. (3) It is my desire that the other half should be divided equally between my two daughters. (4) I wish my wife and daughters to receive an income from all my real and personal estate during their natural lives, after they have got their portions. (5) I wish my wife when she dies to give her property and money to my daughters. (6) It is my desire that my property of whatever kind should, after the decease of my wife and daughters, descend to the children of my daughters respectively, if they are married. In deciding the case the court said: "It is insisted on the part of the defendant that the devises contained in the previous clauses are qualified by the fourth and also by the sixth. But we find nothing in the fourth in conflict with those that precede

it, and, it may be added, very little that is really distinct and intelligible. With regard to the fifth and sixth clauses, it may be enough to say that it is not every expression of a wish in the interpretation of a will that is to be construed as a command, or as the creation of a trust. * * * The previous clause gave the property absolutely and without restriction, and a trust is not lightly to be imposed, upon mere words of recommendation and confidence. * * * The fifth clause merely expresses a wish that the testator's widow, at her death, shall make an equal division of her estate among the children but does not purport to give them any legal or equitable estate. It looks to a disposition to be made by her at her death. A general intent, clearly expressed in a will, is not to be defeated by the addition of equivocal language, or expressions of doubtful or uncertain meaning. To give to the sixth clause the effect contended for by the defendant would require that the terms in which the testator had expressed his primary purpose should be deprived of their legitimate and universally recognized import." And see *Foose* v. *Whitmore* (1880), 82 N. Y. 405, 37 Am. Rep. 572; *Roseboom* v. *Roseboom* (1880), 81 N. Y. 356; *Spears* v. *Ligon* (1883), 59 Tex. 233; 22 Am. and Eng. Ency. Law (2d ed.), p. 1170, and authorities cited.

Some of our own cases go far in support of the conclusion reached by us as expressed in the principal opinion. In *Orth* v. *Orth* (1896), 145 Ind. 184, 32 L. R. A. 298, 57 Am. St. 185, this court, in stating the effect of an expression of confidence by a testator that his wife, to whom his estate was given in express terms, would give what was left to their children, said: "There is not a syllable expressing the intention to charge the estate devised with an enforceable, legal or equitable trust in favor of the children. There is that which, from various expressions, denotes a confiding trust in the wife that she will deal fairly, justly, and equitably with his children. That trust raises but a

moral obligation, and creates no interest in the property in favor of the children, and does not burden the absolute title given by the will to the wife. * * * The one inquiry arising from the letter is: does it point a trust in the property devised, or bespeak the testator's intention to raise a trust in favor of his children? Very clearly, we think, it does not. But, while considering it as a part of the will, suppose its terms were more obscure and doubtful than we have regarded them, and that they should make the question doubtful as to whether the testator intended to narrow the otherwise free and unfettered devise and bequest. Our duty would then be to disregard the doubt and adhere to the clearly expressed provisions as indicating the intention of the testator."

In *Mitchell* v. *Mitchell* (1895), 143 Ind. 113, a will was before this court for construction, in which there was at the outset a devise of lands in fee simple to the testator's widow, and near the close of the will there was an expression of the testator's "request and wish" that his wife would make provision by will so that a son of the testator by a previous marriage might share equally with his other children in the estate devised. It was contended that a trust was created; but the court, in considering the effect of the precatory words, said: "We can not believe 'that, upon the whole, they ought to be construed as imperative.' They are, when construed as restricting the absolute title, in positive antagonism to that title, while, if construed according to their natural and ordinary import, as implying a recommendation, they do no violence to the clearly and emphatically expressed intention to impart an absolute title." See, also, *Lumpkin* v. *Rodgers* (1900), 155 Ind. 285.

7. The vigor of the general rule, where the first grant is plainly unrestricted, is shown by the case of *Thornhill* v. *Hall* (1834), 2 Cl. & Fin. 22, in which the Lord Chancellor used the following language: "I hold it to be a rule that admits of no exception, in the construction of written in-

struments, that, where one interest is given, where one estate is conveyed—where one benefit is bestowed in one part of an instrument by terms clear, unambiguous, liable to no doubt, clouded by no obscurity, by terms upon which, if they stood alone, no man breathing, be he lawyer or be he layman, could entertain a doubt—in order to reverse that opinion, to which the terms would of themselves and standing alone have led, it is not sufficient that you should raise a mist; it is not sufficient that you should create a doubt; it is not sufficient that you should show a possibility; it is not even sufficient that you should deal in probabilities, but you must show something in another part of that instrument which is as decisive the one way as the other terms were decisive the other way; and that the interest first given can not be taken away either by *tacitum* or by *dubium,* or by *possibile,* or even by *probabile,* but that it must be taken away, and can only be taken away, by *expressum et certum.*"

If, upon an examination of a will, a court concludes that it was the purpose of the testator to make a grant, and that he attempted, by subsequent language, to create a legal estate in derogation of the grant, that is the end of the discussion, for a testator must effectuate his intent within the rules of law. The rule that we have invoked does not apply to such cases; it is one of construction, and is wholly consistent with the proposition that the court will explore the four corners of the instrument to bring out its meaning; but, if it is found that one clause, standing alone, clearly evinces a purpose to create a certain interest, and the subsequent language merely operates to create a doubt about the testator's intent in that particular, the latter words will be disregarded.

There is a marked tendency upon the part of testators who are without the benefit of legal advice to indulge, after providing for a definite estate in the first taker, in the expression of some ultimate desire not really intended to impinge

upon the prior language. In most cases the application of the rule brings the right result; but, whether it does or not, if a study of the instrument as a whole does not reveal its meaning, there must be some rule of interpretation. It would be intolerable if there were no such rule, thus leaving the result of the idiosyncrasies of each obscure will dependent upon the mind of the particular court which might be called on to interpret it, and placing a premium on the indulgence in wasteful litigation in the endeavor of the disappointed to reach some court which might solve the doubt in favor of their contention.

Authority settles the question in hand, but in disposing of the case we may add that it seems scarcely necessary to have gone to the books to reach the conclusion that the widow took a fee. There is no other admissible view, if a construction is sought which will give to all of the words employed a just meaning.

The petition for rehearing is overruled.