MARTIN ET AL. V. RAFF ET AL.

[No. 17,165. Filed February 7, 1944. Rehearing denied March 3, 1944.]

510

*F. Edward Dumas*, of Fowler, and *Edwin C. Mills*, of Lincoln, Illinois, for appellants.

*Wilson, Crites & Wilson*, of Hammond (*Agnes Molter*, of Kentland, of counsel), for appellees.

DRAPER, J.—Malkom Hubly died on July 25, 1901, the owner of much real estate and personal property, leaving surviving him his widow, Gussie, a daughter Catherine, a son John and five grandchildren.

For a proper understanding of the case it seems necessary to set out the following portions of the will which was dated June 27, 1901:

"4. I direct that my personal estate of whatsoever kind and wheresoever situated, remaining after payment of above bequests, be divided into three equal parts: A. One of which equal parts I hereby give and bequeath to my daughter, Catherine Hubly, for her own use and benefit forever; B. And one of which equal parts I hereby give and bequeath to my executors hereinafter named as trustees upon the following trusts to-wit: they shall invest the same at interest for the benefit of my grandchildren to-wit: William E. Walters, Joseph H. Walters, Mary Walters, Katie Walters and Harry Walters, in equal right, and shall pay the interest, as it shall annually accrue, to my son-in-law, William B. Walters, the father of said grandchildren, until they shall respectively become twenty-one years of age, and upon the attainment of said age of twenty-one years respectively each of said grandchildren shall be paid by said trustees one-fifth part of said equal part, with its increase; and if either of my grandchildren shall die before attaining the age of twenty-one years, leaving issue, the portion due to such deceased grandchild shall be paid to its issue, but if either shall die without issue, such deceased grandchild's share shall be paid to his or her surviving brothers and sisters above named, in equal parts; and if either of such grandchildren shall cease to live with the said William E. Walters, then all interest accruing thereafter shall be applied by said trustees towards

the support and maintenance of such grandchild; and the said William E. Walters is hereby charged with the support and education of each of said grandchildren in such manner as shall satisfy my trustees, in default of which they shall be at liberty to apply any portion of the said interest accruing as aforesaid, upon each grandchild's share for such grandchild's support and education, as shall seem best to my said trustees; C. And one of which equal third parts I hereby give and bequeath to my executors hereinafter named, as trustees, upon the following trusts, to-wit: they shall invest the same at interest for the benefit of my son, John Hubly, until he shall attain the age of twenty-one years, and shall in the meantime out of such interest support and educate him; and upon his attaining the age of twenty-one years shall pay to him such part and all increase; provided, however, that if my said son, John, shall die before attaining the age of twenty-one years, then and in that case I give and bequeath the said third part, and all its increase, to my wife, Gussie Hubly, if she be living at the time of his death; but if she shall then be dead, I give and bequeath the said one-third part and all its increase to my friend, John Wiget, for his own use forever.

"5. I give and bequeath to my wife, Gussie Hubly, in lieu of all dower in my real estate, the following described lands situate in the County of Menard and State of Illinois to-wit (describing it).

"6. I give and bequeath to my daughter, Catherine Hubly, all interest in the following described lands in Newton County, State of Indiana: (describing them).

"Provided, however, that if my said daughter shall die without issue of her body, then I give and devise an undivided one-half of the said real estate to my son, John Hubly, his heirs and assigns, forever, and an undivided one-half of the said real estate in equal rights, share and share alike, to my said grandchildren (naming them), their heirs and assigns forever.

"7. I give and devise to my five grandchildren, William E. Walters, Katie Walters, Joseph Walters, Mary Walters and Harry Walters, in equal

right, the following described real estate situate in the County of Newton and State of Indiana to-wit: (describing it) ; to have and to hold the same to them, their heirs and assigns forever.

"8. I give and devise to my son, John Hubly, all the real estate owned by me in Menard County, State of Illinois, and in Mason County, State of Illinois, not herein otherwise disposed of.

"In case of death of my said son before arriving at twenty-one years of age, without issue, I give and devise the said real estate to my said wife, Gussie Hubly; but if she be not living at the date of his death then I give and devise the same to my friend John Wiget, his heirs and assigns forever.

"And my said executors as trustees are hereby charged with care of said real estate and collection of rents, upon the said trust mentioned in clause 4, C hereinabove.

"9. I give and devise all the rest and residue of my real estate, wheresoever situated, not herein-above devised, to my beloved wife, Gussie Hubly, her heirs and assigns forever.

"10. (Covers appointment and compensation of trustees.)

"11. It is my will that whoever, in his own name, or in the name of another shall question the validity of this instrument as my last will, or cause the same to be questioned shall take nothing by this will, but shall forfeit all rights thereunder, and what would otherwise be devised or bequeathed to such person shall descend to and be equally divided among my wife, Gussie Hubly, my son, John Hubly, and my friend, John Wiget.

"In witness whereof I have hereunto set my hand and seal this 27th day of June A. D. 1901."

Item 6 of the will described about three thousand acres of land in Newton County, Indiana, which were owned by the testator and one John Wiget as tenants in common. In 1902, Wiget caused the lands to be partitioned and 1,540 acres were set off in severalty

to Catherine "as fully, firmly, and effectually as the same is conveyed to and vested in her by the provisions of the will of Malkom Hubly, deceased, and the decree of partition heretofore entered herein." In 1904, and 1905, Catherine conveyed the lands set off to her by quitclaim deed to J. J. L., who in 1912 conveyed them by special warranty deed to the appellee William Raff, who has ever since been in possession and claiming ownership of them by virtue of said deeds and who has made valuable and lasting improvements thereon. Catherine died January 30, 1936, a spinster, without ever having had a child.

The question to be determined as presented by the issues is the ownership of the lands mentioned in Item 6 of the will and set off to Catherine. The appellee Raff seeks to quiet his title to the real estate. The appellants seek to have the title to the same lands quieted in them, to have the lands partitioned, and to require the appellee Raff to account for the net issues, rents and profits therefrom since the date of Catherine's death.

The interest of William Raff in the lands is the same as Catherine took under the will of her father, and the question, therefore, is: What estate in the lands was created in Catherine by the terms of the will?

The appellee Raff contends that Catherine became seized of the title in fee simple upon the death of the testator and the title should be quieted in him. The appellants contend that Catherine acquired and conveyed an estate which terminated upon her death without ever having had a child born to her and that consequently, when she died, the interest of the appellee Raff immediately ceased and determined and those, or the heirs of those, named in Item 6, other than Catherine, became seized of the fee simple title thereto.

The answer to the question depends of course upon what the testator meant when he spoke in the second paragraph of Item 6 of the will, of the death of his daughter Catherine, for if he meant her death during his lifetime, the appellee Raff must prevail.

It is unnecessary to resort to rules of construction where the intention of the testator is apparent, *Dick* v. *Glenn* (1941), 218 Ind. 282, 31 N. E. (2d) 1009, and appellants assert that a consideration of the entire will, in the light of the circumstances surrounding the relationship of the parties involved, clearly shows the intention of the testator, which, after all, courts must look to and effectuate when discovered. Where the testator's intention is obscure "the circumstances and conditions surrounding him at the time the will was made, his manner of living, and the relationship of the parties involved may be looked to as an aid in construction," *Hutchinson's Estate* v. *Arnt, Admx.* (1936), 210 Ind. 509, 1 N. E. (2d) 585, but it must be borne in mind that this does not mean that effect may be given to an intention proven by extrinsic evidence without regard to the will, *Daugherty* v. *Rogers* (1889), 119 Ind. 254, 20 N. E. 779, for the right to dispose of property by will is limited by the statutory requirement that it must be in writing. *Hertford* v. *Harned* (1916), 185 Ind. 213, 113 N. E. 727. It means only that such evidence may be received for the purpose of determining the meaning of the, words written into the will itself, for the inquiry is never what the testator meant to express, but what the words he used do express. *Lee* v. *Lee* (1910), 45 Ind. App. 645, 91 N. E. 507.

There is no contradiction in the evidence. Malkom Hubly had two children, Catherine and Mary, by his first marriage. His first wife died in 1887 and he

thereafter married one Gussie Anderson in September, 1890, of which marriage, of the three children born, only John, the first born, survived. Gussie Anderson for about ten years prior to her marriage to Malkom Hubly had been an occupant of his home in a capacity somewhat similar to a domestic. After the death of his first wife he indulged in illicit sexual relations with her, which situation resulted in an estrangement between him and Catherine, as a result of which Catherine at about the time of his marriage to Gussie, and some months before the birth of John, left the residence of her father where she had always lived, went to live with her sister Mary, who had married and was the mother of the grandchildren herein mentioned, and never again lived with her father. At the time of his death he was seventy-five years of age, Catherine was about forty-five years of age, John Hubly was ten years of age and Gussie Hubly was about thirty-three years of age.

It is asserted that because of the estrangement of Catherine and her father we must assume that he intended to discriminate against her in his will. This, in our opinion, is a *non sequitur*. Nothing is more certain than that the love and affection that a father has for his child is not so easily destroyed. That he recognized the righteousness of her position, realized his own fault and retained a solicitude for her welfare, is demonstrated by the will itself regardless of construction. Had he left her nothing, or practically nothing, the circumstance, unexplained by others, might be persuasive, but we cannot undertake to balance the unknown degree of the affection he retained for her, against the undisclosed value of her inheritance as construed one way or the other.

Nor do we believe that the relative ages of the parties

indicate that the testator must have expected to die before Catherine would, and therefore have meant, in Item 6 of the will, "die without issue either before or after his death." He had been ill for about two years before he made the will, but there is no evidence that he died of that illness or that he expected or had any reason to believe that he would die of it, or so soon after the execution of the will. Hope springs eternal so far as one's own life is concerned, and the record would seem to indicate that he was a man of more than ordinary virility and might reasonably expect to survive for many years. He must have realized, on the other hand, the uncertainty of life, and that Catherine might die before he died, regardless of their respective ages.

The evidence does not disclose the value of any of the real estate or personal property, and assuming for the sake of the discussion, the truthfulness of appellant's contention that the testator had only Catherine in mind when he inserted the forfeiture clause (Item 11, now made void in Indiana. See § 7-501, Burns' 1933, § 3372, Baldwin's 1934) in the will, it does not follow that he must have thought she might contest the will because he had left her a lesser estate in the real estate described in Item 6, for he could as well have thought that she might be dissatisfied because she believed this real estate, though devised in fee was less in quantity or value than she had expected, or because she felt that she should have had different lands than those given to her.

The appellants contend that the will exhibits a definite plan or scheme on the part of the testator to keep his property within his own family, but we are not impressed by this claim, for any of the lands devised might be alienated, and under some cir-

cumstances go directly to one outside the family by the very terms of the will itself.

The point is made that personalty and realty given to John by other clauses of the will was to be managed by trustees until he became of age, and that the testator must have expected Catherine to survive him, and made the will with that in mind, for he could not have intended a one-half interest in the lands in question to go directly to John without the intervention of these trustees, which would have happened had Catherine died before the testator without having had a child born to her. We do not agree with appellant's reasoning. It seems to us that this circumstance supports the appellee Raff. The testator must have known that Catherine, although she outlived him, might yet die without issue long before John became of age, and his failure to provide for the intervention of trustees upon the happening of this contingency would indicate to us that he intended that John should take no interest in this land if Catherine outlived him, and there would be no need for trustees.

It is said the will demonstrates that the testator was well acquainted with the legal effect of technical words of inheritance commonly used in well drawn wills and that the entire will discloses that whenever the testator desired to give a clear and unconditional fee simple title he used technical words of inheritance, and where he wished the devise to be limited by conditions he omitted such words. But it was not necessary for him to make use of technical words of inheritance in order to pass the fee in the lands. *Snodgrass* v. *Brandenburg* (1905), 164 Ind. 59, 71 N. E. 137, 72 N. E. 1030; *Mulvane* v. *Rude, Executor, et al.* (1896), 146 Ind. 476, 45 N. E. 659; *Smith et ux* v. *Meiser* (1875), 51 Ind. 419. He accomplished

that when he devised "all interest" in the lands, and if we are to presume that he understood the effect of the use of technical words of inheritance as used in the proviso, we must also presume that he understood the effect of the language employed in the first paragraph of the item. While it is entirely beside the point sought to be made by the appellants, it may here be noted that in Clause 5 of the will the testator employed language less explicit in giving thousands of acres of land to his widow, and no claim is made that the language of that section was not intended or was not sufficient to carry a fee simple title.

It is finally said that the use of the words "die without issue" elsewhere in the will (Item 4B) show the testator's intention with regard to this property. ". . . the rule is that words occurring in a will more than once, and which are applied to the same subject, will be presumed to be used always in the same sense, unless a contrary intention appears from the context." *Ames, Admr.*, v. *Conry, Admx.* (1928), 87 Ind. App. 149, 165 N. E. 435, 437. It will be noted that the words are elsewhere used as follows: "and if either of my grandchildren shall die before the age of 21 years, leaving issue, the portion due to such deceased grandchild shall be paid to its issue, but if either shall die without issue, such deceased grandchild's share shall be paid to his surviving brothers and sisters in equal parts." There can be no question that the testator here refers to the death of a grandchild before reaching the age of twenty-one years without reference to the time of his own death, for a definite time, namely twenty-one years of age, is fixed for such death to occur. In Item 4 of the will he refers to death without issue before a particularly designated time, while in Item 6 of the will he refers to death without regard

to any expressly designated time. He is further dealing, in the two items, with entirely different subject matters. As said by appellee in his brief: "It is just as logical to assume that since testator saw fit to limit the death of grandchildren to 21 years of age in the case where he meant it to occur independent of his own death, that he did not mean independent of his own death in case of Catherine's death, because he did not use language indicating he meant her death measured by some other age or time or event."

We have thus considered each circumstance depended upon by the appellants to disclose the intention of the testator, but none serve to show an unmistakable intention on the part of the testator to give Catherine less than a fee simple estate, and the ambiguity of intention remains. Therefore, finding nothing in the language of the entire will, or in the evidence admitted to shed light upon it, which discloses the intention of the testator, we may invoke the assistance of settled rules of construction to determine that intention. *McDowell et al.* v. *Fletcher et al.* (1936), 103 Ind. App. 165, 4 N. E. (2d) 577.

It is settled law in this State "that words of survivorship, used in disposing of an estate, are presumed to relate to the death of the testator, rather than the death of the first taker, and that where real estate is devised to one, in terms sufficient to give a fee simple, and a devise over is made, conditioned upon the first taker dying without issue, the phrase 'dying without issue' is construed to refer to a death in the lifetime of the testator, unless a contrary intention is clearly expressed." *Quilliam* v. *Union Trust Co.* (1924), 194 Ind. 521, 142 N. E. 214. See also *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623; *Teal* v. *Richardson* (1902), 160 Ind. 119, 66 N. E.

435; *Boren* v. *Reeves* (1920), 73 Ind. App. 604, 123 N. E. 359; *McDowell* v. *Fletcher* (1936), 103 Ind. App. 165, 4 N. E. (2d) 577; *Schenck* v. *Schenck* (1939), 106 Ind. App. 179, 18 N. E. (2d) 941. Applying that rule in the instant case and remembering that the law favors an early vesting of estates, we are of the opinion that Catherine took an indefeasible fee simple title to the real estate referred to in Item 6 of the will.

The appellants contend, however, that the rule above referred to is not of controlling importance in this case for the reason that the language used by the testator, while standing alone sufficient to pass a fee simple title, was not sufficient to accomplish that result, in the light of the language used in the proviso, and they say: "if the testator had omitted the proviso . . . Catherine Hubly would have taken a fee simple absolute in the lands in question, but the addition of such proviso in such clear, certain and specific terms, limits and controls it."

If the testator, by the terms of the will, has actually devised an absolute estate in fee to a first taker, he has no estate left after the vesting of such precedent estate, out of which to carve a remainder. *Curry* v. *Curry* (1915), 58 Ind. App. 567, 105 N. E. 951, but "where an estate otherwise an estate in fee simple is devised in one clause of a will in clear and decisive terms, and the subsequent provisions clearly and distinctly show an unmistakable intention upon the part of the testator to give an estate less than a fee simple, such later intention must control." *Hayes* v. *Martz* (1910), 173 Ind. 279, 89 N. E. 303, 90 N. E. 309. The appellants in this connection rely strongly on the fact that words of inheritance were not used in the first portion of the item, but were used in the language of the proviso, and they say the gift to her was not couched

in clear and decisive terms, whereas the gift over was so expressed.

But the proviso in this case, having raised a doubt, does not itself serve to resolve it. The language used by the testator in the first portion of the item, giving as it did all of his interest in the lands, was sufficient to pass a fee simple title to the first taker. It clearly gave. The language of the proviso could have had the same, but no greater effect, upon the happening of the event. It also, under appropriate circumstances, was sufficient to clearly give, but it did not clearly limit or take away.

The judgment is affirmed.

NOTE.—Reported in 52 N. E. (2d) 839.