### NATIONAL MALLEABLE & STEEL CASTINGS CO. v. GOODLET et al.

### No. 10493.

United States Court of Appeals, Seventh Circuit.

March 7, 1952.

Rehearing Denied April 18, 1952.

John K. Ruckelshaus, John C. O'Connor, and Ruckelshaus, Reilly, Rhetts & O'Connor, all of Indianapolis, Ind., for appellant.

Carl Seet, Seet & Rigot, Indianapolis, Ind., for appellee, Alfred P. Goodlet.

Ferman D. McCurdy, Cecil A. Taylor, French M. Elrod, Indianapolis, Ind., for appellee, Stella J. Carter.

Fansler, Fauvre, Young & Chambers, Irving M. Fauvre and David L. Chambers, Jr., all of Indianapolis, Ind., for appellee, National Malleable & Steel Castings Co.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, a corporation organized and existing under the laws of the State of Ohio and a resident and citizen of that State, on October 6, 1949, filed in the District Court its bill of interpleader, alleging the existence of a dispute between appellees (Alfred P. Goodlet and Stella J.

Carter) and appellant (Katherine Simpson, executrix of the will of George L. Laux, deceased), as to the ownership of 942 shares of plaintiff's corporate stock, the certificates for which were deposited with the clerk of the District Court, with the request that plaintiff be discharged from any liability in the matter except to make transfer of the stock on its records and to issue certificates therefor to the person or persons adjudged to be legally entitled thereto. Appellees, by answer to said complaint, asserted that they were each the owners of one-half of said stock. Likewise, appellant by answer asserted ownership in all of such stock. Thereupon, the proceeding was dismissed as to the corporate plaintiff.

The matter came on for hearing before the District Court which made its findings of fact, largely upon a stipulation entered into by the parties, entered its conclusions of law and, by its judgment of June 29, 1951, decided that the shares of stock were owned in equal parts by appellees, and directed that such stock be transferred to them on the books of the corporation. It is from this judgment the appeal comes to this court.

Obviously, the primary issue for decision is whether the corporate stock is owned by appellees or by appellant. Each side lays claim to ownership by reason of the last will and testament of James Goodlet, together with certain court proceedings previously had, asserted to have adjudicated the rights of the parties.

Prior to a discussion of the subsidiary issues upon which the parties rely in support of their respective claims to ownership, it appears appropriate to make a statement of the facts. James Goodlet died testate December 7, 1894, and left surviving him his widow, Martha Goodlet, and three minor children, a son, Alfred P. Goodlet, and two daughters, Stella J. Goodlet and Lillian B. Goodlet. Stella afterward married Carter, and she and her brother Alfred are the appellees in the instant case. They claim ownership of the stock under their father's will as construed by the Probate Court of Marion County, Indiana, subsequently discussed. Lillian afterward married George Laux who, upon her death,

was appointed administrator of her estate. Upon his death, the appellant Katherine Simpson was appointed executrix of his estate. Appellant claims that Lillian inherited the stock through the will of her father, that upon her death the stock descended to her husband, George Laux, and upon his death to appellant as executrix of his estate. Other claims to ownership are made by the appellant by reason of certain court proceedings subsequently discussed.

In the view which we take of the ultimate result to be reached, we find no occasion to decide or discuss in detail numerous contentions advanced in support of appellant's claim. Perhaps they should be briefly mentioned.

The will of James Goodlet was, on December 17, 1894, admitted to probate in the Marion Circuit Court of Marion County, Indiana. At this point we need not be concerned with the terms of the will other than that the testator devised to his three children all his stock in the National Malleable Castings Company (corporate predecessor of the interpleading plaintiff) under certain conditions and restrictions giving rise to this law suit. For reasons shortly to be disclosed, the restrictions and conditions thus imposed do not become material unless and until we reach the point where we are required to determine the ownership of the stock from a construction of the will. Even so, it is pertinent to note that it is the contention of appellees that Lillian Laux, who died without issue, took by her father's will only a life interest in the disputed stock, and at her death it reverted to appellees. On the other hand, it is the contention of appellant that Lillian took the stock without restriction.

Appellant's first contention is based upon the following facts. By the testator's will, the three children were each to receive one-third of the corporate stock. They all being minors, Martha Goodlet, their mother, was appointed as their guardian. On September 27, 1898, the final report in the estate of James Goodlet was filed and approved. It recited that pursuant to the will the corporate stock was transferred to her as guardian for and on behalf of the three children, the respective shares of

which were to be transferred by her to each of the three children as they reached the age of their majority. It is pointed out that this order of court by which the stock was transferred from the executor to the guardian contained no restriction or indication other than that the guardian took such stock on behalf of the children as the absolute owners thereof. It is contended by appellant that this was a judgment that Lillian Goodlet became and was the absolute owner of the stock inherited by her.

Appellant's second contention is based upon the following facts. Martha Goodlet, in her capacity as guardian, as the three children respectively became of age transferred to them their share in the stock. Each of these transfers was made under an order of the appropriate court and was without restriction and condition as to ownership. It is contended by the appellant that the transfer thus made to Lillian Goodlet was a judgment of the court that she was the absolute owner of the stock inherited by and delivered to her.

Appellant's third contention rests upon the following facts. Lillian was married to George Laux shortly after she became of age, and she and her husband moved to and became residents of King County, State of Washington. There they resided until May 26, 1942, when Lillian died. The shares of stock now in dispute had been delivered to her by her guardian on March 6, 1901, and remained in her possession until the date of her death. Lillian left no children. Her husband was appointed administrator of her estate in the Superior Court of King County, Washington. The possession of the certificates for this stock passed to her husband, and while the record does not definitely disclose, it appears they were considered and treated by him as assets of her estate.

In the meantime, on November 16, 1942, the appellee Alfred P. Goodlet filed in the Probate Court of Marion County, Indiana, his complaint to construe the will of his father, James Goodlet. Named as defendants were the corporation, Stella J. Carter and George L. Laux, both in his capacity as an individual and as administrator of the estate of Lillian B. Laux. Personal service was had upon the corporation by serving its authorized agent in the State of Indiana, and Stella J. Carter. George L. Laux, individually and as administrator, being a resident of the State of Washington, was given notice by publication.

Returning to the probate proceedings in the estate of Lillian Laux in the Superior Court of the State of Washington, there was entered, on August 11, 1944, an order approving the final report and decreeing distribution. The order stated that notice to creditors was published as required by law and, among other things, recited a summary of the proceedings which had been commenced in the Probate Court of Marion County, Indiana, by Alfred P. Goodlet, that no personal service had been had upon George L. Laux as administrator, that no claim had been filed by Alfred P. Goodlet or any other person claiming any of the assets of said estate, that the time for filing said claims had long since passed, and that the administrator upon the advice of his attorneys had ignored said litigation in the State of Indiana and proposed to make distribution of the estate without reference thereto. On the same date an order was entered by that court directing that all the assets of the estate of Lillian B. Laux be transferred and conveyed to George L. Laux.

Shortly thereafter, George L. Laux moved to the State of Montana and while a citizen and resident of that State died November 28, 1944. Katherine Simpson, the instant appellant and a sister of George L. Laux, was appointed executrix of his estate on November 19, 1947, by the District Court for the County of Fergus, State of Montana. Thereupon, the certificates of stock in the possession of George L. Laux prior to his death passed to her as executrix of his estate. Such certificates remained in her possession until on or about June 19, 1949, when she delivered the same by letter to the home office of the corporation at Cleveland, Ohio, with the demand that they be transferred on the books of the corporation to her as such executrix. It may be observed that George L. Laux had actual notice of the will construction action commenced in Indiana, November 16,

1942, by Alfred P. Goodlet, and also that Alfred P. Goodlet had actual notice of the probate proceedings in the estate of Lillian B. Laux, that the shares of stock in controversy were claimed as a part of the assets of her estate and that such stock, pursuant to a court order, was transferred and delivered to her husband, George L. Laux, as her only heir. Appellant contends that the proceeding in the Superior Court of the State of Washington was an adjudication that the corporate stock in question was owned without reservation by Lillian B. Laux and that unencumbered title to such stock passed to George Laux—more specifically, that the decree or order entered in that matter is *res adjudicata* of the question now in litigation.

So far as the record discloses, the proceeding instituted by the appellee Goodlet on November 16, 1942, in the Probate Court of Marion County, Indiana, to construe the will of his father, remained dormant until February 21, 1947, almost three years after the final report had been made in the Washington court by George Laux, administrator of the estate of his wife. In the meantime, George Laux had, on November 28, 1944, died, while a citizen and resident of the State of Montana. On February 21, 1947, the Probate Court of Marion County, Indiana, on the affidavit of the appellee Goodlet (plaintiff in that action), entered an order directing that service be had by publication upon the unknown heirs of George L. Laux. No question is raised but that this service by publication was had in accordance with the law of the State of Indiana. As already noted, Katherine Simpson was appointed executrix of the will of George L. Laux on November 19, 1947, in an appropriate court in the State of Montana and had in her possession the stock certificates in controversy. Thus, no service was had upon Simpson as executrix and only constructive service was had upon her as one of the unknown heirs of George L. Laux.

On June 26, 1947, a decree was entered in the Marion Probate Court, which recited in effect that service had been had by publication upon the unknown heirs of George L. Laux and, upon their failure to answer,

a default was taken as to them. The decree construes the will of James Goodlet and concludes that Lillian took only a defeasible interest in and to the shares of stock in controversy, subject to divestment upon her death without issue. The decree recited that Lillian died without issue and that all her right, title and interest in said stock went to, vested and became the property of Alfred P. Goodlet and Stella J. Carter (appellees here), share and share alike, with the right on their part to have said stock transferred to them on the books of the corporation.

Appellees contend that this decree of the Probate Court of Marion County, Indiana, is res adjudicata as to the rights of the parties and that such being the case it was determinative of the issue presented to the District Court. On the other hand, appellant contends that the Marion Probate Court was without jurisdiction to hear and decide the rights of the parties and particularly was without jurisdiction to enter a decree binding upon the unknown heirs of George Laux.

Appellant Simpson further argues that if the decree of the Marion Probate Court be held to be without force and effect as to the heirs of George L. Laux, and even though all the other contentions heretofore related are decided adversely to her, she is entitled to the stock under a fair construction of the Goodlet will, and, finally, that in any event appellees under the undisputed facts are estopped from claiming ownership in the shares of stock.

The District Court, after finding the evidentiary facts, found that the appellees were each the owners of one-half of the shares of stock in suit, made a conclusion of law to the same effect and directed that the shares of stock be transferred accordingly on the books of the corporation. There is nothing in the record to show how the court viewed or disposed of the numerous contentions advanced by appellant. It is evident, however, that the court did not construe the Goodlet will, and it appears that all contentions advanced by the appellant, by which ownership of the stock was claimed, were denied, including the contention that appellees were estopped

from claiming ownership. And it must be assumed, so we think, that the court treated the decree of the Marion Probate Court as *res adjudicata* as to the ownership of the stock and accordingly decided the issues in favor of appellees.

We shall, therefore, first consider the respective contentions of the parties relative to that decree. Admittedly, the Marion Probate Court had statutory jurisdiction of actions to construe wills but it does not necessarily follow, as appellees appear to argue, that it had jurisdiction on constructive notice to render a binding decree against nonresident or unknown parties. It is undisputed that the *res* was not within the jurisdiction of the court at the time the action was commenced or when the decree was rendered. On the former date, the certificates for the shares in dispute were in the State of Washington, and at the time the decree was entered they were in the State of Montana. The corporation issuing the stock was in Ohio, where its office and place of business was located. We need not, therefore, discuss, much less decide, the contrariety of opinion as to whether the *situs* of corporate stock is in the jurisdiction where the certificates are held or in that where the corporation is located, for the reason that the adoption of either view is of no aid to the court's jurisdiction.

Appellees attempt to escape the impact of this situation by arguing that the subject matter of the suit was the construction of the will. We think this a dubious contention, but in any event the plain fact is that the primary issue tried and decided was as to the ownership of the corporate stock. True, in deciding such ownership resort was had to the will, but that was only incidental or secondary to the main objective and we discern no reason why it should be placed in a category different from any other form of written instrument. And it does not follow, as appears to be argued, merely from the fact that the court had jurisdiction of actions of this class that it had jurisdiction in the case before it, either of the subject matter or of the parties.

We think under the rule as announced by the courts of Indiana that the Marion Probate Court was clearly without jurisdiction to render a binding decree against the nonresident and unknown defendants. Obviously, it was not a decree *in personam* because no personal service was had, and we think it was not one *in rem* because there was no property in the jurisdiction upon which the judgment of the court could operate.

In Quarl v. Abbett, 102 Ind. 233, 1 N.E. 476, an action was brought against a nonresident defendant based on the fraudulent transfer of stock in an Indiana corporation. The non-resident defendant was served by publication. There, the corporation whose stock was in controversy was within the jurisdiction of the court. The court agreed that no personal judgment could be rendered against the non-resident defendant, and stated, 102 Ind. at page 236, 1 N.E. at page 478: "A personal judgment is one which binds the defendant, while a judgment which operates upon property is, in its essential features, a judgment *in rem*. Such a judgment creates no personal liability, but operates upon the particular property which constitutes the subject of litigation. A judgment operating solely upon property cannot be made the foundation of an action against the defendant; nevertheless it may effectively operate upon the particular property within the jurisdiction of the court."

And, 102 Ind. at page 237, 1 N.E. at page 478: "It is a general principle that the process of the courts may reach and seize property within their jurisdiction. A man who brings property within the territorial jurisdiction of a state subjects it to the laws of that state."

And (same page): "But the rule is not as contended for; property within our jurisdiction may be seized upon process issued upon constructive notice."

The court further stated, 102 Ind. at page 239, 1 N.E. at page 480: "Any question affecting the status of the specific property within the jurisdiction of the court and the rights of the parties in the property may be tried. The purpose of notice by publication is to give the best notice practicable to non-resident defendants, and thus enable the court to fully decide the controversy

respecting property within its jurisdiction, no matter what form the question may assume."

In Michigan Trust Co. v. Probasco, 29 Ind.App. 109, 63 N.E. 255, the action was by an Indiana party to determine the title to certain corporate stock (building and loan stock) where the corporation was located within the jurisdiction of the Indiana court. The defendant was a Michigan party and held the certificates to such stock. The court held that the Indiana court had jurisdiction solely on the ground that the corporation issuing the stock was within its jurisdiction. The court stated, 29 Ind.App. at page 114, 63 N.E. at page 257: "The certificate evidencing the obligation of the association is in another jurisdiction, but the subject-matter of the action is the indebtedness of the association on the stock. The certificate of stock is no more than evidence of the debt of the association, and the *situs* of this debt is, not the place where the evidence of the debt happens to be held, but the residence of the debtor."

The court further stated, 29 Ind.App. at page 115, 63 N.E. at page 257: "The cause of action arose where the association is located. It is to determine the ownership of a debt at the residence of the debtor. The jurisdiction of the court over the debtor and the cause of action was complete. * * Although appellant was a nonresident, the service of the summons, equivalent to publication, gave the court jurisdiction of the person so far as necessary to determine the rights of the litigants in this particular property which was within the jurisdiction of the court."

In Northern Indiana Railway Company et al. v. Lincoln National Bank, 47 Ind.App. 98, at page 110, 92 N.E. 384, at page 388, the court, concerning jurisdiction in a garnishment proceeding, stated: "Furthermore, in the garnishment case of Dunnahoo against Dilworth, the only jurisdiction the St. Joseph circuit court had to adjudicate the matters in controversy between them (Dilworth being a nonresident), was based upon the fact that certain property of, or debts due, Dilworth, were within the jurisdiction of the court and subject to its orders, and the efficiency of the notice by publication rested upon the fact that certain property of Dilworth had been brought within such jurisdiction and control."

Other Indiana cases have held that the validity of a judgment affecting a non-resident defendant is dependent upon the presence of property within the jurisdiction of the court. Hellebush v. Blake, 119 Ind. 349, 350, 21 N.E. 976; Isbell v. Heiny, Administrator, 218 Ind. 579, 583, 33 N.E.2d 106; Sowders v. Edmunds et al., 76 Ind. 123. And this rule, so often announced in Indiana, is the same in other jurisdictions. Typical of many cases which could be cited is that of Austin v. Royal League, 316 Ill. 188, 195, 147 N.E. 106, 109, wherein the court stated: "A decree rendered against a party who is beyond the limits of this state, upon constructive notice by publication under our statute, does not bind the party personally. [Citing cases.] Where neither the *res* nor the persons interested are before the court no binding decree can be rendered."

The Supreme Court of Illinois, in Bickerdike v. Allen, 157 Ill. 95, 101, 41 N.E. 740, 741, 29 L.R.A. 782, in discussing a similar question stated: "The theory of the law is that when a man's property is brought under the control of the court by seizure, such seizure informs and notifies him of the proceedings taken for its sale or condemnation. In such cases, constructive notice is permitted and becomes effectual solely by reason of the attachment or seizure of the property. The jurisdiction of the court to determine the obligations of the defendant constructively notified is incidental to its jurisdiction over the property. The judgment has no effect beyond the property reached or affected in that suit."

True, none of these cases involve a controversy as to the ownership of property dependent upon the construction of a will and we have been unable to find such a case. However, in our view, it could make no difference in determining the jurisdiction of the court to render a binding decree whether the controversy has its inception in a will or some other form of written instrument.

Appellees cite a number of cases in support of their contention either that the judgment is not subject to the infirmities asserted or, in any event, that it is not sub-

ject to collateral attack. A reading of such cases, however, demonstrates that they are of little, if any, assistance. No case is cited wherein it has been held that a court had jurisdiction to render a judgment against a non-resident defendant where the property, as here, was located beyond the jurisdiction of the court. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, contains some language which, standing alone, is favorable to appellees' contention. However, it is clearly distinguishable because the court, in holding the notice by publication sufficient to confer jurisdiction over unknown beneficiaries of a trust fund, was treating of a situation where both the trustee and the trust fund were within the jurisdiction of the court. If anything, the case militates against rather than in favor of appellees' contention.

True, as argued by appellees, the Indiana courts, as well as most courts, adhere to the strict rule that judgments generally are not subject to collateral attack. However, in all of the Indiana cases which we have examined the court rendering the judgment had jurisdiction of the subject matter, that is, the property, but there was some irregularity in the publication notice or the affidavit upon which such notice was predicated. Typical of such cases are Jackson v. State, 104 Ind. 516, 3 N.E. 863, and Essig v. Lower et al., 120 Ind. 239, 21 N.E. 1090. In the Jackson case the proceeding was to enforce a drainage assessment upon land located in the court's jurisdiction. The original judgment in the proceeding was under attack because it was claimed certain of the parties had not received a notice in compliance with the statute. After citing numerous Indiana cases, the court held that this was a collateral attack but in doing so stated, 104 Ind. at page 518, 3 N.E. at page 864: "Of course, this rule cannot apply where there is no jurisdiction of the subject-matter, or where there is no notice or summons, but it does apply in all cases where there is some notice, or some writ and service, although defective."

In the Essig case, the court had before it a suit to quiet title to real estate located within the jurisdiction of the court. Serv-ice had been had upon some of the parties by publication, which it was contended did not comply with the statute. The court held that the decree under attack was not void and not subject to collateral attack, citing and quoting from the Jackson case. See also the later Indiana case, Gescheidler et al. v. National Casualty Co. et. al., 120 Ind. App. 673, 96 N.E.2d 123.

Finally, on this phase of the case, we refer to Cooper v. Reynolds, 10 Wall. 308, 77 U.S. 308, 19 L.Ed. 931, wherein it was held that a State court had jurisdiction to render a personal judgment against non-resident defendants on constructive notice where the property sought to be attached was within the court's jurisdiction. The reasoning of the court is persuasive in the instant matter. The court defined what was meant by jurisdiction thus, 10 Wall. at page 316: "This right has reference to the power of the court over the parties, over the subject-matter, over the *res* or property in contest, and to the authority of the court to render the judgment or decree which it assumes to make."

Referring to a judgment entered in a proceeding where there was no appearance by defendant and no service of process on him and in the absence of property within the court's jurisdiction, the court stated, 10 Wall. at page 318: "No suit can be maintained on such a judgment in the same court or in any other, nor can it be used as evidence in any other proceeding not affecting the attached property * * *."

And on the following page the court stated: "It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiff."

In our view, and we so hold, the decree of the Probate Court of Marion County, Indiana, purporting to construe the will of James Goodlet, was void insofar as it decides or affects the title, right or interest of the unknown heirs of George Laux in and to the stock certificates in controversy.

In view of our conclusion, as subsequently shown, that appellant is entitled to the stock in controversy under and by the terms of the will of James Goodlet, we think it unnecessary to decide other contentions advanced by appellant, to which we have heretofore alluded. We say this notwithstanding the persuasive argument made for the application of the doctrine of estoppel against appellees. In addition to the facts which we have already related, the appellees, as well as Lillian B. Goodlet, each received under and by the same provision of their father's will one-third of the stock upon arriving at their majority. Lillian received her stock on December 6, 1901, and until the date of her death, on May 26, 1942, had possession and treated it as her own. She dealt in it as her own property, selling some shares and purchasing others. She even purchased some shares from her brother Alfred. During all this period of more than forty years no question was raised but that she was the absolute owner. More than that, Alfred Goodlet received his stock on February 26, 1909, and two years later sold it. Stella received her stock on October 4, 1900, and since then has sold or pledged all of it with the exception of 114 shares. Thus, during all this period appellees not only recognized the stock inherited by their sister Lillian as her absolute property but they treated and recognized the stock which they had inherited and to which they acquired no different title than that acquired by Lillian as their absolute property. Appellees had knowledge upon Lillian's death that possession of the certificates passed to George Laux, her husband, as administrator of her estate and, although presented with the opportunity to do so, made no claim to the controverted stock. It was not until after her death that the suit was filed in the Probate Court of Marion County, Indiana, and even then no further action was had in that suit for almost five years, or until after the death of George Laux, when service was had by publication upon unknown heirs. No purpose could be served in relating other circumstances bearing upon this issue of estoppel because we are not disposed to rest our decision on that premise.

This brings us to the question as to whether appellees or appellant are entitled to the stock in dispute under and by the terms of the will of James Goodlet.

The testator, after making provision for his wife and for the maintenance and support of his children until they arrived at the age of 21 years, made certain provisions, designated as items 3, 6 and 7, material to the instant controversy. These items are as follows: "Item 3. I give, devise and bequeath to my beloved children, Stella J. Goodlet, Lillie B. Goodlet and Alfred P. Goodlet, all my personal property of every kind and description other than my household furniture, the personal property so devised to my said children to include all money on hand and on deposit, all choses in action owing to me and all stock owned by me in the National Malleable Castings Company and all other personal property of every kind and description other than said household furniture, they to share and share alike therein." (The household furniture mentioned in this item had, by previous provision, been bequeathed to the testator's wife.)

"Item 6. It is my will that all moneys coming into the hands of my Executors either from money on hand or on deposit, or from dividends on stock, shall be used in so far as shall be necessary in the event that the devise to my wife shall prove insufficient for that purpose, in maintaining and educating my children, and that all of the residue thereof be loaned out on good security at the best rate of interest obtainable; and that my stock in the National Malleable Castings Company shall not be sold or disposed of until my youngest child arrives at the full age of twenty-one years, provided said National Malleable Castings Company or its successor shall continue so long in prosperous business.

"Item 7. In the event of the death of either of my said children without issue, it is my Will that his or her share in my said personal estate shall go to the surviving child or children."

"In the event of the death of either of my said children without issue," in item 7, are the critical words. Appellees contend that the word "death" in this phrase re-

fers to that of the child and that inasmuch as Lillian died without issue her shares of stock passed to the surviving children (appellees). Appellant contends that the word "death" refers to that of the testator and that the children, having survived the testator, took their shares of stock without limitation or condition. If the testator, after devising the stock to his children in item 3, had made no reference thereto other than that contained in item 7, there would hardly be an arguable question but that under the law of Indiana the children would have taken absolute title to the shares of stock at the time of their father's death or, at the latest, at the date on which they arrived at their majority. More specifically, the word "death" in item 7 plainly refers to that of the testator and not that of the legatees. In other words, if the children were living at the time of his death the provision was inoperative.

In Pullen et al. v. Pullen et al., 120 Ind. App. 284, 91 N.E.2d 856, the court had before it for construction the following provision of a will: "If any of my said sons as hereinbefore named shall die without leaving a child or descendants of a child surviving such son, then the portion herein devised to such child or children of such son shall thereupon be divided among my children surviving such deceased son, share and share alike, to be held by them in fee simple title."

In rejecting a contention similar to that advanced by appellees here, the court stated, 120 Ind.App. at page 287, 91 N.E.2d at page 857: "Thus it is evident that testator had in mind that if one of his sons should die during his lifetime, leaving a descendant who survived the testator, the property devised by him would vest in such surviving descendant."

And the court stated (on the same page) that it was the intention of the testator "* * * to provide for the situation which would arise if a son died during the lifetime of the testator, leaving no descendants surviving the testator, and by reason thereof the devise should lapse. Inasmuch as all three sons survived the testator, this contingency did not arise."

True, the court made a statement, 120 Ind.App. at page 288, 91 N.E.2d at page 857, much relied upon by appellees and subsequently referred to: "Such rule is one of construction only, and yields to the intent of the testator, * * * but no contrary intent of the testator is expressed in the will in this case."

Other cases where the same rule of construction has been applied to a provision similar to that under discussion are Quilliam et al. v. Union Trust Co. of Indianapolis et al., 194 Ind. 521, 533, 142 N.E. 214; Sipe et al. v. Merchants Trust Co. et al., 109 Ind.App. 566, 571, 34 N.E.2d 968; Martin et al. v. Raff et al., 114 Ind.App. 507, 52 N.E.2d 839. In the latter case the rule was stated thus, 114 Ind.App. at page 520, 52 N.E.2d at page 845: "It is settled law in this state 'that words of survivorship, used in disposing of an estate, are presumed to relate to the death of the testator, rather than the death of the first taker, and that, where real estate is devised to one, in terms sufficient to give a fee-simple, and a devise over is made, conditioned upon the first taker dying without issue, the phrase "dying without issue" is construed to refer to a death in the lifetime of the testator, unless a contrary intention is clearly expressed.'" (Citing numerous cases where the rule has been applied to a devise of both real and personal property.)

No further cases need be cited in support of this rule of construction because it is conceded by appellees. They rely, however, upon another principle, that is, that the rule must yield to the intent of the testator. (See our previous reference and quotation from Pullen et al. v. Pullen et al.) In our judgment, however, the application of this principle is of no aid to appellees. Their argument is predicated in the main upon item 6, that the testator could not have intended that absolute title pass to his children at the time of his death because he provided that the dividends on the stock should be used, if necessary, to maintain and educate his children and that the residue should be loaned on good security. But we discern nothing in this provision inconsistent with what we think was the clear purpose and in-

tention of the testator, that is, that he intended that his children should become the absolute owners of the stock providing they were living at the time of his death, and in case a child died prior to that time, without-issue, that child's share should go to the surviving child or children. The record does not disclose the ages of the children at the time the will was written but it is inferable they were of tender years. The testator had made, by devises to his wife, what he regarded no doubt as sufficient to care for the children but, in the event it was not sufficient, he desired that the income from the property bequeathed to the children, including the dividends on the corporate stock, should be used for that purpose up until the time the children reached the ages of their majority and were entitled to possession of the stock. Evidently the testator did not intend that his children should be entitled to the possession of the stock at the time of his death. What he did intend was that they should become owners at that time and entitled to possession when they respectively became of age. In the meantime, it was intended that the persons entitled to possession of the corporate stock at the time of the testator's death, either his executors or presumably a guardian appointed for the minor children, should have authority, if necessary for their maintenance, to use the dividends from the stock during the period of their minorities. We think there is nothing in this arrangement inconsistent with the testator's desire or intent that his children should become the absolute owners of the stock at the time of his death, with the right of possession postponed until they became of age.

We have no difficulty in deciding that Lillian at the time of her father's death became the absolute owner of the stock in controversy, the same as did appellees as to the stock inherited by them, and that such stock received by Lillian was upon her death inherited by her husband and upon his death passed to appellant as the executrix of his estate. While it perhaps is immaterial, it is difficult in concluding to refrain from making the observation that all parties interested in the Goodlet will treat-

ed and considered it in a manner consistent with the construction which we place upon it. The stock was delivered by the executors of the estate of James Goodlet to Martha Goodlet, the mother and guardian of the children, held by her during the period of their minorities and delivered to them upon their becoming of age, in both instances without any indication of restriction upon ownership. Each of the children, over a period of many years, have dealt with the stock in a manner evidencing their belief that they were the absolute owners of that which had been bequeathed them by their father.

The judgment is reversed and remanded, with directions that it be vacated and a judgment entered in favor of appellant and against appellees. The judgment appealed from provides for the payment of the sum of $1,000 from accumulated dividends in the registry of the court to counsel of record for the corporate plaintiff for services rendered by them in the matter. So there may be no misunderstanding, this reversal is without prejudice to the right of the court to incorporate the same provision in the judgment to be entered.