OSBORN *v.* OSBORN ET AL.

[No. 18,455.   Filed January 19, 1954.   Rehearing denied
February 18, 1954.]

*Roy Sheneman* and *Albert B. Chipman,* both of Plymouth, for appellant.

*Jesse L. Osborn,* and *Nichols & Nichols,* all of Knox, for appellee.

KELLEY, J.—The will of Amos Osborn was duly probated April 7, 1933. Said will consists of eleven Items only one of which, namely: Item 5, gives rise to the controversy involved in this appeal. Said Item 5 reads as follows:

"5. I hereby will and bequeath unto my son Jesse L. Osborn, with the restrictions hereinafter described, the following described real estate in Starke County, Indiana, to-wit: The south half of the south half of the Northwest Quarter Section Twenty-four, also the east half of the northeast quarter of section Twelve; also the east half of the north half of the Northeast Quarter of the Southeast Quarter and the east half of the south half of the Southeast Quarter of the Northeast Quarter; all in section one and also an easement or a private road of fifteen feet in width on the east side of the south half of the Northeast Quarter of the Southeast Quarter of Section one. All of said above described parcels of land lying in Township thirty-two North range one west containing 140 more or less, which real estate I hereby will and bequeath to my son Jesse L. Osborn, for and during his natural life, to pass to his wife, Josephine Osborn, for and during her natural life, the remainder to pass to my son Everett Osborn and my grand-son

Gerald Osborn share and share alike, or the descendants of them, subject to the contingency that in the event that my son Jesse L. Osborn shall leave a child or children surviving him by his present or any subsequent wife, in which case it is my will that the death of the said Jesse L. Osborn said real estate hereinbefore devised to him shall pass to said widow and child or children in fee or to said child or children in fee in the event that their mother be dead on the death of my son Jesse L. Osborn, subject however to the lien of three hundred per annum hereto for created in favor of my wife Alice Osborn. This provision of the will as to children of my son Jesse L. Osborn to be in no manner construed to include his son Jesse Osborn Jr. by a marriage to a former wife. *It is my will that my son Jesse L. Osborn, may and if he so desires sell any or all of said real estate, if he deems it advisable and use of said proceeds, and at his death the proceeds derived from the sale of said real estate not expended by him shall go to and be distributed as in this clause of my will directed."* (Our emphasis.)

The appellee, Jesse L. Osborn, is the son of the decedent and the only living life tenant named in said Item 5. Appellant is the grandson of the testator and one of the remaindermen named in said Item of said will. Appellees, Donald Osborn, Glen Osborn, Cleta Sudemyer, Hildred Johnson, and Fay Osborn, are the heirs of the testator's son, Everett Osborn, now deceased, who was also named as a remainderman in said Item 5. Appellees, Thomas Krsek and Emmy Krsek are the contract purchasers from the life tenant, Jesse L. Osborn, of a portion of the described real estate. The appellee, Jesse Osborn, Jr., is the son of appellee, Jesse L. Osborn.

Appellant petitioned for a construction of said Item 5 of said will. Appropriate issues were formed and submitted for trial. Upon request, the court found the facts specially and stated its conclusions of law thereon to

the effect that said Item 5 gave to appellee, Jesse L. Osborn, a life estate in the described real estate with a power to sell the same. Judgment was rendered consistent with the stated conclusions.

The assigned errors raise but one question. We quote it from appellant's brief: "did the last will and testament of Amos Osborn, deceased, give appellee, Jesse L. Osborn, a life tenant, the power to sell the real estate described in Item 5 thereof?" For clarity we have italicized the final sentence of said Item 5, which purports to grant to the life tenant the power to sell.

It is appellant's contention that said clause or last sentence of said Item 5 of said will "does not grant the appellee, Jesse L. Osborn, the power to sell" the real estate. He predicates his contention upon a rule of testamentary construction, profoundly confirmed in this state, which he phrases in these words: "Where one clause of a will is clear and decisive in fixing an estate, it cannot be cut down or taken away by subsequent words which are not as clear and decisive as the first." Passing from the general to the specific, appellant next asserts that the testator, by said Item 5, in clear and decisive language granted to appellant and Everett Osborn a remainder *in fee* which the subsequent clause, being less clear and decisive, was powerless to cut down or destroy.

With the major rule of law, as substantially stated by appellant, we agree, but we are impelled to observe that the authorities defining the legal interests of the parties preclude application of the rule to the instant case.

The first taker of the described real estate in said Item 5 was the appellee, Jesse L. Osborn, son of the testator, who, by the will, took an express life estate. Then followed a life estate to Jesse's wife, Josephine (deceased in 1936), and the re-

mainder over to appellant and Everett Osborn, in equal shares, subject to a designated contingency. A lien in favor of Alice Osborn (deceased 1947), wife of the testator, was next provided. By the final clause of the Item a power to dispose was appended or annexed to the express life estate.

Assuming for the moment the legal efficacy of the empowering clause, the appellant and the appellee heirs of Everett Osborn, as the designated remaindermen, are not, under the provisions of this will, the unqualified owners of the fee and they cannot become such as long as Jesse L. Osborn lives and is able to execute the power conferred. *McMillan et al.* v. *Deering & Co.* (1894), 139 Ind. 70, 75, 38 N. E. 398. Conversely, under the repeated holdings in this state, the particular estate of Jesse L. Osborn, being an express life estate, was not, by the gift of the power, enlarged into a fee, notwithstanding his power, under the will, as the life tenant, to dispose of the fee. *Wible et al.* v. *Hunt et al.* (1951), 121 Ind. App. 130, 133, 98 N. E. 2d 235, and cases cited. The gift of the power to dispose of the whole estate, annexed to the life estate of Jesse L. Osborn, with remainder over to appellant and Everett Osborn, conferred upon the said life tenant plenary power to convey the fee, and such power is not void for repugnancy. *Rinkenberger* v. *Meyer* (1900), 155 Ind. 152, 56 N. E. 913, and cases cited.

The estate created by the exercise of the power of disposal does not take effect out of the interest of Jesse L. Osborn, as the life tenant, but out of the estate of the testator not embraced in the life interest. 19 Am. Jur. 577, Estates, §121, Notes 16, 17 and 18. *Rinkenberger* v. *Meyer, supra; Wiley, et al.* v. *Gregory, et al.* (1893), 135 Ind. 647, 651, 35 N. E. 507. As was said by the court in the case of *McMillan, et al.* v. *Deer-*

*ing & Co., supra,* wherein the appellee claimed title in fee to the real estate by mesne conveyances from the testator's widow as the holder of the life estate: "The title of the appellee, the fee, is derived not from, but through, Mrs. Rupert from the testator" and, similarly, in the case of *Wiley, et al.* v. *Gregory, et al., supra,* it was said by the court in comment upon a suggestion relative to the case of *Hale* v. *Marsh,* 100 Mass. 468: "if she (Mrs. Hale) conveyed to him (Marsh) simply by virtue of the power contained in the will, he would derive his title from the testator."

Thus, it is apparent that the interest of appellant and said Everett Osborn, as remaindermen, is not cut down or taken away by the power granted by the will to the life tenant, Jesse L. Osborn, for the reason that the estate of the latter, upon the exercise of the power, comes not from that of the remaindermen but from the estate of the testator granting the power.

At this point, it serves the continuity of thought to consider appellant's proposition that the power of sale, if upheld, "would involve a possible destruction of the devises" to appellant and Everett Osborn. In the main this proposal has been resolved by the antecedent observations. However, we add that when the power of disposal is exercised by the life tenant, the interest of the remainderman is wiped out, 33 Am. Jur. 482, Life Estates, Remainders, etc., §19, Note 16, and page 518, §59, Note 9; 31 C. J. S. 109, Estates, §92, Note 94; *Talbot* v. *People* (1930), 339 Ill. 333, pt. 3, 171 N. E. 183; and if the power is not exercised by the life tenant, the property undisposed of goes to the remainderman upon the death of the life tenant. *Dunning, et ux.* v. *Vandusen, et al.,* (1874), 47 Ind. 423, 425, 33 Am. Jur. 482, Estates, Remainders, etc., §19, Notes 17 and 18, page 518, §59, Note 8, and on page 547, §90, Note 15.

We next inquire whether it appears from the will that the testator intended to grant to the life tenant, Jesse L. Osborn, the power of disposal and, if so, whether he has sufficiently complied with the applicable rules of law to accomplish his intent. Appellant contends that the empowering clause is ambiguous, precatory, and inconsistent with the general "scheme, program or policy disclosed by the other parts of the will."

To exemplify his asserted ambiguity, appellant makes note of certain of the words and phrases used by the testator in the pertinent clause and labors upon them as being meaningless and uncertain. We have examined each of appellant's detailed claims and we are not impressed with the cogency of the assertions made. The language used by the testator, though not, perhaps, such as an expert draftsman would employ, is sufficiently clear and decisive, when considered in the entirety, of the testator's intent. Appellant's urged construction would render the testator's words useless and void of meaning. That the testator placed the empowering clause at the close of the Item is strongly indicative of his contemplation of the matter and, therefore, his intention with regard thereto.

The language used is direct and positive, and necessitates no inferences or implications. The power as given is fettered with no restrictions, no limitations, no qualifications. There is no ambiguity or doubt in the terms here used and, hence, we are not called upon to go into all the circumstances surrounding the testator at the time the will was executed. We think it clear from the will that he desired and intended that his son, the life tenant, should have the right and power to sell the described real estate, if he so desired.

We do not conceive the empowering clause under consideration to be precatory, as contended by appellant.

Appellant's brief does not clearly indicate what features or parts of the clause render the provision precatory, but we gather from it that the use of the words "It is my will" are considered by appellant to merely express the wish or desire of the testator.

Whether words are precatory or mandatory depends upon the expressed intention of the testator, and is determined by the context of the will. They must not be repugnant to positive provisions by which the same property is devised or bequeathed absolutely or without limitation. No such repugnancy is here evident. The testator gave an express life estate to his son and then, in a later portion of the same Item, said: "It is my will that my son . . . may and if he so desires sell any or all of said real estate . . . ." It is apparent from the context that the words "It is my will" were not used in the sense of expressing a recommendation, request, suggestion, wish, advice, or desire. It is, on the contrary, clear that the testator used the words in the sense of vesting in or granting to his son, the life tenant, the optional power to sell the real estate.

Looking to other items of the will we find confirmation. In Item 1, it is provided: "I hereby will and direct" that my debts be paid; in Item 5 (here under examination) the life estate is given by the words: "I hereby will and bequeath"; in Item 7 certain real estate is devised to the appellant herein and it is then provided that if appellant dies before his parents, leaving wife and child or children, "I desire" that said wife take one third, etc., and again in said Item 7 it is provided that under certain specified events "it is my desire" that appellant shall take. All these extracts from the testator's will demonstrate very forcibly that he consistently employed the words "will," "desire" and "direct" in the sense and with the intent of granting an estate or

right. There appears no cause for attributing a different meaning to the words as here used.

We have carefully surveyed the entire will in this case and we fail to find, nor has appellant pointed out to us, wherein the power of disposal granted in the final clause of said Item 5 is at variance with the "general scheme, program or policy" of the testator as shown by the different parts or Items of his will. The real estate and interests described and provided for in said Item are not elsewhere mentioned or referred to in the will. Appellant appears to indicate that because the testator devised or granted to him realty interests, without provisions for defeasance, in other Items of the will, it follows that the testator did not intend to provide a defeasance in Item 5 by granting to the life tenant the power of disposal. It is not our prerogative to change or destroy the expressed intention of the testator upon considerations of the manner in which he devised his other real estate in different and unconnected parts of his will. His reasons, patent only to him, for utilizing different procedures in the disposition of his property were undoubtedly sufficient to him for his so doing. Certainly they disclose no program or policy warranting us to displace his stated intention.

Appellant further contends that in connection with that portion of the first line of said Item 5 immediately preceding the description of the real estate, the use of the words *"with the restrictions hereinafter described"* refer to the "indefeasable fee in remainder devised" to appellant and Everett Osborn and, consequently, there results such an inconsistency as to make it evident that the testator did not intend to grant a power of disposal of the fee. In the absence of a clear indication in the Item here before us, we look to other parts of the will for light as to what "restrictions" were referred to by the testator.

In Item 9 it is provided that the testator's sons and grandson to whom "I have willed" certain real estate shall keep the taxes paid and carry insurance on the buildings for "so long as there remains any lien privilege or *restriction*" created under this will. In Item 3 the testator charged a lien upon the property "hereinafter willed" to "my sons and grandson" for the payment of the annuity provided for the testator's wife. By Item 6 the testator devised real estate to the appellant *"subject to the restrictions hereinafter provided"* and then specified the devise was *"subject . . . to a lien* of three hundred dollars per annum in favor of my wife . . . during her natural life." Item 7 devises certain real estate to appellant *"subject to the following restrictions."* Then follows the right of his parents to live on the real estate, a lien charge in favor of testator's wife, a lien charge in favor of appellant's sister, and a direction to appellant to pay taxes and keep up insurance. It is further provided that if appellant should die before his parents, the land devised to appellant *"subject to all privileges and restrictions hereinbefore set out"* shall go to his sister *"subject to the restrictions in favor of my wife."* (Our emphasis.)

It is evident from a consideration of the use by the testator of the restriction phrase in various parts of his will that he referred to and meant by said phrase the charges made against the devised real estate for specified purposes and especially those in favor of his wife during her life. Item 3 expressly provides for her annuity and makes it a charge against all the real estate devised to the testator's sons and grandson and to further safeguard it, Item 9 provides for the payment by them of taxes and the furnishing of insurance. In Item 6 wherein the same phrase is used, the only restriction mentioned is the annuity to the wife. The same is true of the provisions in Item 7

wherein, also, are the charges for other purposes. In view of the repeated use of the word "restrictions" by the testator as applying to the charges against the real estate and particularly to the annuity charge in favor of testator's wife, we are not inclined to give that phrase a different meaning or reference in its use in Item 5. Nothing appears in said Item 5 which requires or suggests a different application of the restriction phrase and appellant refers us to no source supporting the interpretation he places upon it. We see no inconsistency such as appellant proposes.

Appellant finally suggests that in view of the apparent determined effort of the testator to provide for the welfare and sustenance of his wife, the grant to the life tenant of the power to dispose of the real estate made subject to the charge in her favor is inconsistent with the avowed intention of the testator to protect her and renders nugatory the empowering clause. We are not here concerned with nor do we express any opinion either as to the validity of the charge as against the interest of the life tenant or as to whether the exercise of the power of disposal by the life tenant would operate to destroy such charge. Such question is not presented to us by the record.

We do not, however, perceive any such inconsistency as defeats the express intention of the testator to grant the power. The capability of affecting the lien or charge by a conveyance is one matter, the gift of the right to sell and make the conveyance is another. It does not result therefrom that the two are inconsistent. Nor does it follow that the fact that the real estate may be encumbered destroys or precludes the power of the testator to make a gift of the right of disposal.

The record discloses that the appellee, Jesse L. Osborn, in the exercise of the power of disposal granted him by the will, has made disposition of two tracts or

parcels thereof. By Finding No. 9, the court finds that he sold to Everett Osborn and Fay Osborn the real estate described as follows:

"The South half (S½) of the South half (S½) of the Northwest Quarter (NW¼) of Section Twenty-four (24), Township Thirty-two (32) North, Range One (1) West, in Starke County, Indiana,"

and by Finding No. 7, it is found that said Jesse L. Osborn entered into a written contract for the sale to appellees, Thomas Krsek and Emmy Krsek, as husband and wife, of the real estate described as:

"The East half (E½) of the Northeast Quarter (NE¼) of Section Twelve (12), Township Thirty-two (32) North, Range One (1) West, in Starke County, Indiana."

These two described parcels constitute the only part of the real estate found to have been sold by the life tenant pursuant to his power.

However, by its Conclusion No. 4 and in clause 4 of its judgment, the court concludes and decrees, "That the exercise of the power of sale . . . by Jesse L. Osborn, has divested the plaintiff, Gerald Osborn and the heirs at law of Everett Osborn, deceased, of the contingent remainders to the following described real estate . . .," and the court includes in its description of the real estate not only the said two parcels found to have been sold by said Jesse L. Osborn but additional portions of the real estate described in said Item 5 of said will. As we have heretofore pointed out, any property undisposed of by the life tenant is taken by the remainderman upon the death of the life tenant. It follows, that until the power of disposal is exercised by the life tenant, the rights and interests of the remainderman are not "divested" or destroyed.

The inclusion in Conclusion No. 4 and in clause 4 of the judgment of real estate not sold or disposed of by Jesse L. Osborn was error and the judgment to that extent, is erroneous.

It was held in *Buchanan* v. *Milligan* (1886), 108 Ind. 433, 435, 9 N. E. 385, that "appellate courts may modify a judgment, or may reverse in whole or in part, as the justice of the case requires." See, also, *Ginter* v. *Ginter* (1914), 56 Ind. App. 98, 104 N. E. 989. In *McAfee* v. *Reynolds* (1891), 130 Ind. 33, on page 39, 28 N. E. 423, the court states: "The record fully enables us to ascertain and declare the justice of the case . . . and render such a judgment as will secure to each party his just right. . . . To accomplish this it is always proper to so mold the form of the mandate as that the trial court may carry into effect, by the appropriate record entries, the judgment of the appellate tribunal."

It is therefore ordered that the lower court eliminate from its Conclusion No. 4 and clause 4 of its decree all the description of the real estate except that with reference to which the life tenant, Jesse L. Osborn, was found to have exercised his power of disposal, being the two parcels described in the court's findings Nos. 7 and 9, respectively; that the judgment of the lower court, when so modified, be and the same is hereby affirmed.

NOTE.—Reported in 116 N. E. 2d 653.