In the Matter of the Trust of Claude A. FORTH, Sr., Judy Forth Bogle, Appellant (Petitioner below),

v.

Claude A. FORTH, Jr., Eulamay Forth Abraham, and Janet Forth Ferguson, Appellees (Respondents below).

No. 1–1279A373.

Court of Appeals of Indiana, First District.

July 8, 1980.

As Amended Sept. 15, 1980.

David A. Clase, Sr., Harper & Clase, Indianapolis, for appellant.

Arthur P. Kalleres, Scott A. Smith, Ice, Miller, Donadio & Ryan, Indianapolis, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal from the Hancock Circuit Court by appellant, petitioner below, Judy Forth Bogle (Judy) from an adverse judgment on her complaint against co–trustees Claude A. Forth, Jr. (Claude), Eulamay

Forth Abraham (Eulamay), and Janet Forth Ferguson (Janet) for alleged breach of trust.

We affirm.

## STATEMENT OF FACTS

Claude A. Forth, Sr., died on November 4, 1974, leaving a last will and testament, which was duly probated, by which he created a trust, the corpus of which consisted solely of 3,453 shares of common stock in Brookside Corporation (Brookside), a family–owned corporation. These shares comprised 43 percent of the common stock. In essence, the trust income was given to Eulamay, the testator's widow and mother of Judy, Claude, and Janet, for life. Upon her death, the corpus was ordered equally divided among Judy, Claude, and Janet, free of trust. American Fletcher National Bank and Trust Company of Indianapolis was appointed trustee.

At the time of the testator's death, Claude was executive vice president and general manager of Brookside. Judy was not a director of Brookside at that time, but her husband, Jack, was. Jack was also an employee and secretary of the corporation. At the January, 1977 shareholders meeting, Judy and her husband, Jack, Claude, Eulamay, Janet and her husband, Jerry, Richard Deer, and two representatives of American Fletcher National Bank were elected to the board of directors of Brookside. Thereafter the directors quarreled. One topic, among others, that was the subject of discord was an attempt by Judy and Jack to procure the discharge of Jack's superior at the Brookside plant.

On February 16, 1977, American Fletcher National Bank resigned as trustee and, by consent of all interested persons, Judy, Claude, Eulamay, and Janet were appointed co–trustees.

In May, 1977, Jack was reassigned in his employment at Brookside, and on December 31, 1977, his employment was terminated altogether.

By year's end, 1977, the dissension had settled down to two rival camps, Judy and Jack on one side, and Claude, Eulamay, Janet, and the two outside directors on the other. The latter five directors all testified that the activities of Judy and Jack on the board were not productive and were, in fact, counterproductive. In December, 1977, after discussion between and among the four co-trustees, Claude proposed a slate of directors which did not include Judy and Jack. Janet and Eulamay gave their proxies to Claude to vote the trust shares in favor of the proposed slate at the upcoming shareholders meeting on January 2, 1978. Prior to January 2, Judy served notice of a meeting of the co–trustees to be held on January 2, before the shareholders meeting, but her co–trustees did not feel obligated to attend and did not. The shareholders meeting was attended by Judy, Janet, Claude, and Eulamay who voted their personal shares. The trust shares were voted by proxies by a majority of the co–trustees in favor of the proposed slate. Judy made no objection to the actions of the co–trustees in voting the trust shares as they did. The slate of directors proposed by Claude was elected and consisted of Claude, Eulamay, Janet and her husband, Jerry, Richard Miller, John Foley, and Walter Kirkwood.

On January 16, 1978, Judy filed this action alleging that her co–trustees breached the trust by preventing her participation in trust activities and specifically alleging the voting of the trust shares as the breach. She asked the court to set aside the election of the directors and order a new election; to instruct the co trustees to vote the Brookside shares in accordance with the express terms of the trust, which she contended gave her the right to have the trust shares voted to place her on the board of directors; to remove the co–trustees and appoint a corporate trustee; and to award her attorney's fees.

## PROCEDURAL DEFICIENCIES

 In denying relief to Judy, the trial court made elaborate findings of fact, numbering 56, and conclusions of law, numbering 13. Appellees argue to this court that Judy failed to set out in her motion to

correct errors or brief any of these findings of fact or conclusions of law or the judgment and therefore has waived any issue relative thereto. It is true that these failures can result in waiver of alleged errors relative thereto. *National Steel Corporation v. Manley*, (1963) 135 Ind.App. 444, 194 N.E.2d 416. Appellees further argue that the motion to correct errors lack specificity as required by Ind.Rules of Procedure, Trial Rule 59(B),[1] and that Judy's brief is inadequate to present the issues. An appellate brief is required to be prepared so that each judge, considering the brief alone and independent of the record, can intelligently consider each question presented. *Anderson v. Indiana State Employees' Appeals Commission*, (1977) Ind.App., 360 N.E.2d 1040. A verdict or finding against one having the burden of proof is a negative decision and may not be attacked on the ground that there was a lack of evidence as was done in assignments 2, 3, 4, and 6 below. *Ott v. Johnson*, (1974) 262 Ind. 548, 319 N.E.2d 622. There is a great deal of merit in the appellees' contentions. Nevertheless, we desire to exercise our prerogative and decide this matter upon the merits.

## STANDARD OF REVIEW

Judy suffered a negative judgment in a bench trial in which the trial court made specific findings of fact and conclusions of law. Accordingly, our standard of review is governed by T.R. 52(A), which provides, in pertinent part, as follows:

> "On appeal of claims tried by the court without a jury or with an advisory jury, at law or in equity, the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

In elaboration of the "clearly erroneous" standard, the Civil Code Study Commission Comments state that:

> "[A] finding upon an issue against a party with the burden of proof will be reversed only if the evidence is uncontra-

dicted and will support no reasonable inference in favor of the finding."

3 W. Harvey, Indiana Practice, Civil Code Study Commission Comments—Rule 52(A), at 423 (1970); *See also Alfaro v. Stauffer Chemical Co.*, (1977) Ind.App., 362 N.E.2d 500.

■ The findings or judgment of the trial court will be found clearly erroneous only when upon our review of all the evidence we are left with a definite and firm conviction that the trial court erred. *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155.

■ In determining whether a negative judgment is contrary to law, this court, as an appellate tribunal, neither weighs the evidence nor resolves questions of credibility of witnesses, but considers only the evidence most favorable to the appellees, together with all reasonable inferences deducible therefrom. It is only where the evidence leads to but one conclusion and the trial court has reached the opposite conclusion that the decision of the trial court will be disturbed as being contrary to law. *Fisel v. Yoder*, (1974) 162 Ind.App. 565, 320 N.E.2d 783; *Link v. Sun Oil Company*, (1974) 160 Ind.App. 310, 312 N.E.2d 126.

■ Uncontradicted evidence will sometimes support conflicting inferences and when that is the case, the inferences drawn by the trier of the facts will prevail. *A.S.C. Corporation v. First National Bank of Elwood*, (1960) 241 Ind. 19, 167 N.E.2d 460; *Haynes v. Brown*, (1949) 120 Ind.App. 184, 88 N.E.2d 795.

## ISSUES

The following issues are presented for our decision:

I. Whether or not the trial court erred in admitting the appellees' testimony as to the meaning of the term "management", over the timely objection of the appellant.

II. Whether or not there was sufficient evidence to support a finding that there was no breach of trust.

---

1. Indiana Rules of Court, West 1978.

III. Whether or not there was sufficient evidence to support a finding of cooperation among the co–trustees.

IV. Whether or not there was sufficient evidence to support a finding that Eulamay and Janet did not breach their fiduciary responsibilities by giving proxies.

V. Whether or not the trial court erred in holding that the appellant's subsequent actions served as a waiver of her claims for relief.

VI. Whether or not the trial court erred in not concluding that co–trustees Claude and Janet breached their duties of loyalty to the trust.

VII. Whether or not the trial court erred in not awarding the appellant attorney's fees.

## DISCUSSION AND DECISION

*Issue I.*

██ Judy's first argument is that the trial court erred in admitting the appellees' testimony as to the meaning of the term "management" over her timely objection. She argues that parol evidence cannot be admitted to construe the terms of the trust. Judy did not favor us in her brief or in her motion to correct errors with a recital of this evidence or her objections thereto. Having failed to do so, she has waived all error in connection with this testimony. *Guerrettaz v. Public Service Co. of Ind., Inc.*, (1949) 227 Ind. 556, 87 N.E.2d 721; T.R. 59(B); *Huber v. Huber*, (1960) 131 Ind.App. 96, 164 N.E.2d 651. Nevertheless, we shall address the matter on its merits. From the appellees' brief we are able to derive what actually occurred.

Judy called Janet as her witness and elicited testimony concerning her interpretation of the testamentary trust, which testimony included references to conversations with the testator, Janet's father. On cross examination by the appellees, the same subject was pursued. Judy objected on the grounds of the Dead Man's Statutes,[2] that the document spoke for itself, and that resort to parol evidence was unnecessary.

The court ruled that Judy had "opened the door" in direct examination and overruled the objection.

██ Judy cites authority to the effect that a will or trust will be interpreted and construed according to the intent of the testator as expressed by the instrument itself. *Estate of Maloney v. Carsten*, (1978) Ind.App., 381 N.E.2d 1263; *Collins v. Held*, (1977) Ind.App., 369 N.E.2d 641. Formal rules of construction are not to be resorted to in situations where the intent is apparent. *Moorman v. Moorman*, (1973) 156 Ind. App. 606, 297 N.E.2d 836; *Hauck v. Second National Bank of Richmond*, (1972) 153 Ind. App. 245, 286 N.E.2d 852. These, of course, are correct statements of the law.

██ Generally, when a given subject is opened up on direct examination, cross–examination may go into any phase of that subject which tends to modify, explain, or rebut the statements made on direct examination. *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798; *Rodinelli v. Bowden*, (1973) 155 Ind.App. 582, 293 N.E.2d 812. Once evidence of a conversation is introduced, the opposing party is entitled to introduce its own evidence explaining the conversation. *Bandy v. Myers*, (1967) 141 Ind.App. 220, 227 N.E.2d 183. Further, Judy herself on direct examination testified to conversations with her father on the subject of his intent. She thereby waived any error in the trial court's ruling. *James v. Picou*, (1974) 162 Ind.App. 134, 318 N.E.2d 377.

We are of the opinion that the trial court committed no error in overruling Judy's objection.

*Issue II.*

Judy's next argument is that there was insufficient evidence to support a finding that there was no breach of trust.

A proper resolution of this issue involves an interpretation of Section 11.01, Clause (f) of the testator's will, which reads as follows:

*"Clause (f) To Retain Property Owned by Testator*

2. Ind. Code 34–1–14–6–8.

Power to retain for such period as it shall deem proper any property owned by me at the time of my death including shares of stock in Brookside Corporation or any successor corporation. My Executor and Trustee shall have no liability for failure to sell or for selling any stock of Brookside Corporation or any successor corporation. In voting such stock, it is my desire that there be no change in management so long as the corporation is operated profitably and that my wife be elected to the Board of Directors if she desires to serve. In determining whether any or all of the stock should be sold, it is my desire that the bank take into account the prospects of the business, its past performance, the terms and conditions upon which such stock could be sold, the wishes and needs of my wife and my descendants, the future employment of my descendants and their spouses, and any other factors it deems relevant, but its decisions in such regard from time to time shall not subject it to any liability."

Judy argues that the testator's choice of words in Clause (f) demonstrates the clear intent of the testator that the trustee should vote the shares to reelect her to the board of directors of Brookside. In finding No. 40, the trial court found that in the sentence "In voting such stock, it is my *desire* that there be no change in the management so long as the corporation is operated profitably and that my wife be elected to the Board of Directors if she desires to serve" (emphasis added), the word "desire" was unambiguously precatory and not mandatory or directive. In finding No. 41, the trial court found that there was no testamentary intent that the trustee vote any particular person or group of persons, including Judy and her husband, to the board of directors of Brookside. In finding No. 42, the trial court found that the word "management" cannot be interpreted to mean that there could be no change in the board of directors since the terms "management" and "Board of Directors" appear in the same sentence and only the widow is mentioned in reference to the board, and then in a precatory sense. Judy argues

that Clause (f) is contained in the powers clause and is thus directed toward the trustee, and that powers conferred upon the trustee by the terms of the trust are presumedly imperative rather than discretionary.

■ Certain rules of construction exist. Whether words are precatory or mandatory depends upon the express intention of the testator and is determined by the context of the will. *Osborn v. Osborn,* (1954) 124 Ind.App. 295, 116 N.E.2d 653. Where the maker of a will repeatedly uses concise, legal, and technical terms to express his intention to vest an estate or interest in property, a change in phraseology to precatory expressions in connection with the disposition of other property indicates rather clearly that he did not intend such precatory words to create enforceable obligations; otherwise, he would not have abandoned language with which he was familiar and which was unmistakably suited for the purpose. *Lewis v. Atkins,* (1952) 122 Ind.App. 618, 105 N.E.2d 183. Further, when a will is drafted by an experienced and skilled attorney, importance should be attached to the use of identical or different words. *Fischer v. Kaylor,* (1969) 145 Ind. App. 148, 250 N.E.2d 19. Where identical words are used in the same context in the same paragraph of a will, they should be given identical meanings. *Martin v. Raff,* (1944) 114 Ind.App. 507, 52 N.E.2d 839. The intention of a testator, if the instrument is unambiguous, will be determined from the four corners of the instrument. *Hauck, supra.*

■ This will was drafted by Richard E. Deer of the law firm of Barnes, Hickam, Pantzer & Boyd. Throughout the will there are many instances where the mandatory "shall" is used, demonstrating an intended difference in meaning from the word "desire." The one sentence at issue is, "In voting such stock, it is my desire that there be no change in management so long as the corporation is operated profitably and that my wife be elected to the board of directors if she desires to serve." While the widow is

mentioned in relation to a desire for her to be on the board of directors of Brookside, no other person or group is suggested. The term "management" appears separately from the term "directors." Since the trust controlled only 43 percent of the voting shares, there was no means by which it could absolutely control the election of the board. Even Judy concedes in her brief that the testator "could not absolutely mandate that those shares be voted in a manner which would result in no change in the management." Further, the term "desire" is used twice in the same sentence. If "desire" that there be no change in management were mandatory, then "desire" in reference to the widow's serving on the board would be mandatory. *Martin, supra.* If Judy's construction were accepted, the widow would have to serve on the board whether she liked it or not.

It is significant that Judy was not a member of the board of directors at the death of the testator and did not so become a member until three years later. Other changes were made in the board after the testator's death. Judy participated and acquiesced in these changes, evidencing that she once adopted the construction of the will now advanced by the appellees.

We are of the opinion that Clause (f) is entirely precatory in nature. The very nature of the subject matter necessarily dictates much discretion being reposed in the trustee to meet the vicissitudes of time. We are of the opinion that the trial court was correct in its interpretation of the will.

*Issue III.*

Judy's next argument is that the trial court erred in its conclusion of law No. 2 that the co-trustees had been able to administer the affairs of the trust. The only material evidence of disagreement demonstrated to us is in the voting of the shares. The record contains many examples of cooperative participation by Judy unaccompanied by divisiveness. Some are as follows: (1) examination of the articles of incorporation of Brookside by Judy; (2) employment of an attorney for the trust and fixing of his fee; (3) receipt of accountancy of trust business; (4) signing of checks and documents as co-trustee; and (5) consultation relative to the voting of the shares.

Ind. Code 30-4-3-4(a) provides:

"Unless the terms of the trust provide otherwise:

(a) Any power vested in two (2) trustees must be exercised by them jointly; any power vested in three (3) or more trustees must be exercised by a majority."

Ind. Code 30-4-3-8(a) provides:

"Unless the terms of the trust provide otherwise, if there are two (2) or more trustees, each has a duty to:

(a) participate in the administration of the trust".

There is no showing whatever that Judy was excluded from participation in the management of the trust; the record merely shows that she was outvoted. Ind. Code 30-4-3-4(a) contemplates some disagreement among co trustees. Ind. Code 30-4-3-4(b) provides for a situation where they are unable to agree as a majority:

"(b) If there are two (2) or more trustees and they are unable to exercise a power under subsection (a) of this section:

(1) If there is an immediate risk of irreparable damage to the trust property or the interest of any beneficiary before court approval could be obtained, any trustee may exercise the power and petition the court for approval after the power has been exercised: but

(2) if there is no immediate risk of irreparable damage to the trust property or the interest of any beneficiary, any trustee may petition the court for permission to exercise the power . . . ."

■ It is true that if the actions of a majority of co trustees seem to transcend their powers, the minority trustees are justified in requiring a judicial interpretation of the matter. *Zaring v. Zaring,* (1942) 219 Ind. 514, 39 N.E.2d 734.

■ Judy seems to argue that in spite of Ind. Code 34 4 3 4(a) permitting a ma-

jority of co–trustees to exercise a power, her concurrence is necessary for the validity of any exercise of a power by the co–trustees. This is not the law. The co–trustees act by a majority vote. The trial court did not err in conclusion of law No. 2.

### Issue IV.

■ Judy next contends that the co–trustees breached the trust by executing proxies to co–trustee Claude. She argues this is an illegal delegation of authority and cites Ind. Code 30–4–3–6(b) which provides, in part, as follows:

"(b) Unless the terms of the trust provide otherwise, the trustee also has a duty:

\* \* \* \* \* \*

(11) not to delegate to another person the authority to perform acts which the trustee can reasonably perform personally . . .."

However, this section must be considered modified by Ind. Code 30–4–3–3 (Supp.1979) which provides, in part, as follows:

"Unless the terms of the trust provide otherwise:

(a) Subject to subsection (c) of this section, a trustee has the power to perform without court authorization . . . .

\* \* \* \* \* \*

(15) to vote securities, in person or by a general or special proxy . . . ."

The specific language of Ind. Code 30–4–3–3(a)(15) must, of course, govern. *County Council of Bartholomew County v. Department of Public Welfare of Bartholomew County,* (1980) Ind.App., 400 N.E.2d 1187. Further, Article 11, Clause (h) of this trust contains a specific provision for voting corporate shares as follows: ". . . and power to vote in person or by proxy in corporate or other meetings."

We conclude, therefore, that the trial court did not err in finding that no breach of trust occurred by the use of proxies in voting the shares.

### Issue V.

Under this assignment Judy argues that the trial court erred in holding that her actions subsequent to the 1978 elections served as a waiver of her claims for relief in conclusion of law No. 10.

Examination of the findings of fact and conclusions of law reveals that the trial court addressed itself to the merits of the case, and the waiver ruling was only an alternative theory. We have addressed ourselves to the merits also. Therefore, no good purpose would be served by a discussion of this issue as we are affirming the case upon its merits.

### Issue VI.

■ Judy argues that the trial court erred in not concluding that co–trustees Claude, Janet, and Eulamay breached their duties of loyalty to the trust. She argues that the evidence in the case evinces lack of objectivity, conflict of interest, and bad faith sufficient to justify their removal as co–trustees. Judy cites no authority and thus it may be said she has waived this issue. *Williams v. State,* (1973) 260 Ind. 543, 297 N.E.2d 805. Nevertheless, we shall discuss it.

■ Under Ind. Code 30–4–3–6 the trustees have a duty to administer the trust according to its terms solely in the interests of the beneficiaries and to treat the beneficiaries impartially. The trustees are obligated to take possession of the trust property, preserve it, make it productive, keep it segregated, maintain accounts, and inform the beneficiaries of the affairs of the trust.

No evidence has been adduced by Judy to show any violations of Ind. Code 30–4–3–6. The only material evidence, and the entire scope of the litigation, concerns the fact that she and her husband were voted off the board. The trust administration is a simple matter. All the interested persons are co–trustees. No evidence or theory has been advanced to explain how a corporate trustee or a stranger to the trust could improve upon the administration of the trust. Evidence and logic demonstrate that such a change would merely be an unnecessary expense to the trust.

We are of the opinion that the trial court committed no error in this regard.

*Issue VII.*

█ Judy's final argument is that the trial court erred in refusing to award her attorney's fees. Her argument adopts the premise that she, in good faith, concluded that there was a breach of trust, and that she had a statutory duty under Ind. Code 30–4–3–8 to file an action to redress the breach of trust. Under that section of the trust code, a co–trustee has a duty to "take whatever action is reasonable to prevent a co–trustee from committing a breach of trust." Judy cites *Zaring, supra,* as authority for the awarding of attorney's fees.

In *Zaring* there were four co–trustees who were also beneficiaries. Three of the trustees filed a petition with the court for authority to appoint a bank as rental agent. The fourth trustee objected. The court granted the petition and awarded attorney's fees to the majority trustees and minority trustee. The majority trustees argued that the minority trustee was at fault in unnecessarily causing the litigation. The court said in 219 Ind. at 522, 39 N.E.2d at 737:

> "If the proposals of the majority seem to him to transcend their powers or to import serious injury to the trust estate or its beneficiaries we think he is justified in requiring a judicial determination of its validity before he gives his consent.

> . . . . . .

> The right to compensation at the cost of the estate should not depend upon the result of the litigation but rather upon the reasonable necessity for such litigation. And on that subject a court passing on the question of allowances ought to consider not merely the result, but whether the trustees are acting reasonably and in good faith, whether the issue on which they are divided is of little or momentous consequence to the estate or its beneficiaries, whether the facts are undisputed or are so controversial as to require an adversary proceeding for their determination, whether the legal questions are simple or complex, settled by precedents or open to serious debate, and any other matters that bear upon the reasonableness or the necessity for the litigation and the multiple employment of attorneys therein. The court might conclude that all or none of the attorneys should be paid by the estate. . . .

> All these matters, it seems to us were in this instance for the determination of the regular judge in the exercise of a sound discretion, and in the absence of an affirmative showing of error or abuse of discretion we must affirm his order."

Judy has not demonstrated such an abuse of discretion.

The judgment of the trial court is affirmed.

Affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.