**Larry A. ROBERTSON,
Plaintiff–Appellant,**

v.

**Michael MATTINGLY,
Defendant–Appellee.**

**No. 1–480A90.**

Court of Appeals of Indiana,
First District.

Dec. 16, 1980.
Rehearing Denied Jan. 22, 1981.

George T. Whelden, Jr., Indianapolis, for plaintiff–appellant.

Robert W. York, George & York, Indianapolis, for defendant–appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiff–appellant Larry A. Robertson (Robertson) appeals from a negative judgment in the Hancock Superior Court in an action for replevin of an automobile.

## STATEMENT OF THE FACTS

The evidence most favorable to the judgment is as follows: Sometime during August, 1969, Robertson brought his 1953 MG automobile to Gene McClelland of McClelland Company (McClelland), a car dealership in Muncie, Indiana, for restoration and repair. Robertson instructed McClelland to restore the car to a good operating condition. On October 24, 1969, Robertson made a partial payment to McClelland for work performed on the MG. Sometime in August, 1970 Robertson moved out of state, leaving the MG in the possession of McClelland. A repair bill dated August 27, 1969, listed "3242 Bayshore Blvd. N.E." as the address of Robertson; no city or state address appeared on the bill. Robertson testified that he had left the car at McClelland's for two years without inquiring on the amount owed for repair and storage of the vehicle. Furthermore, Robertson testified that he had recognized McClelland to be in the business of repairing and selling new and used vehicles. On May 3, 1971, Marie Welch (Welch) purchased the MG from McClelland by writing out two personal checks: one to McClelland for $389.00 and another to Dan Parker (Parker) for $175.00,

a person thought to have had an interest in the vehicle. Parker, under Robertson's instructions, was to contact Robertson on any matter concerning the MG that McClelland brought to his attention. Robertson had given McClelland Parker's name and telephone number. On July 30, 1971, McClelland resold the car by public auction to Welch, a representative of Butler Imports, Ltd. (Butler). Welch had authority to act on behalf of Butler. Butler applied for a certificate of title for the MG to the Indiana Bureau of Motor Vehicles (Bureau) on August 12, 1971. Bureau issued Butler title on October 4, 1971. This subsequent sale was pursuant to the statute governing mechanic's lien foreclosure sales, Ind.Code 9–9–5–6, including the sending of specific verifying documents to the Bureau as required by the statute and motor vehicle regulations. The record shows the following documents were sent to Bureau: 1) a copy of the sales certificate from McClelland to Butler; 2) an application for a certificate of title by Butler; 3) a copy of a registered letter sent to Robertson notifying him of unpaid charges owned on the car and its forthcoming sale at public auction; and 4) a publisher's affidavit showing placement of an advertisement on July 14 and 21, 1971, in a local newspaper notifying the public of the forthcoming public auction of the MG at McClelland's place of business.

At the time of the mechanic's lien foreclosure sale $389.04 was owed for work performed on the MG in parts and labor charges, and $1,095.00 for storage charges. Testimony revealed that at the time of the foreclosure sale the MG was worth no more than $600.

Robertson testified that he first knew that the MG was a missing vehicle in June, 1971; however, Parker knew Robertson's address and telephone number in Florida, and Parker had telephoned Robertson in Florida notifying him that Parker might have a buyer interested in the MG. This conversation was prior and unrelated to the actual sale of the MG to Butler. On May 3, 1971, Parker accepted $175.00 from Welch for his interest in the MG. Robertson testi-

fied that he had telephoned Parker sometime during August, 1971 to ascertain the whereabouts of the MG. However, Robertson had already learned from his brother in March, 1971 that the MG was missing. Parker certainly knew that the MG had been sold because he had received $175.00 from Welch for release of any interest he might have in the MG. We can only speculate as to whether Parker notified Robertson of the sale of the MG after receiving the check from Welch. Nevertheless, Parker was Robertson's authorized representative, and therefore, we can assume that as an authorized representative Parker did notify Robertson the MG had been sold. McClelland, before selling the MG, notified Parker of his intention to sell it, further demonstrating not a hint of impropriety on McClelland's behalf. Robertson testified that he reported to the police the MG missing on August 23, 1971.[1] Robertson did not notify the Bureau that the MG's title might be defective until August 10, 1978. Moreover, in the latter part of 1975, Robertson discovered that Bureau had issued title in the MG to one James A. Morris, 10618 Timber Lane, Carmel, Indiana. Robertson then waited over seven months before sending a letter to Morris on July 19, 1976, demanding that he relinquish ownership of the MG to Robertson. Morris refused.

Appellee Michael Mattingly (Mattingly), the seventh title–holder of the MG since its sale by McClelland to Butler, had never known or heard of Robertson before this lawsuit. Mattingly purchased the MG from one Thomas W. McShay on August 2, 1978. Due to the initiation of legal proceedings by Robertson, Mattingly did not receive certification of title to the MG from Bureau until January 17, 1979.

## ISSUES

Robertson presents the following issues on appeal:

I. The decision and judgment of the trial court relevant to a purported mechanic's lien sale of a 1953 MG automobile, TD 23722, is not supported by the evidence.

II. The decision and judgment of the trial court that title to, and right to possession of, a 1953 MG automobile, TD 23722, was divested from Larry Robertson is contrary to law.

III. The trial court could not have properly based its decision and judgment on the basis of the affirmative defense of laches.

IV. The trial court could not have properly based its decision and judgment on the basis of the affirmative defense of the statute of limitations.

V. The trial court could not have properly based its decision and judgment on the basis of the affirmative defense of estoppel or waiver as no evidence was presented.

## DISCUSSION AND DECISION

*Issue I.*

■ Robertson first contends the trial court's judgment is not supported by the evidence. A verdict or finding against one having the burden of proof is a negative judgment and may not be attacked on the ground that there was a lack of evidence. *Forth v. Forth*, (1980) Ind.App., 409 N.E.2d 1107. Mattingly argues, and rightfully so, that Robertson fails to present an appealable issue.

*Issue II.*

■ Robertson's second argument challenges the trial court's judgment as being contrary to law. In determining whether a negative judgment is contrary to law, this court, as an appellate tribunal, neither weighs the evidence nor resolves questions of credibility of witnesses, but considers only the evidence most favorable to the appellees, together with all reasonable inferences deducible therefrom. It is only

---

1. By a verified affidavit of June 15, 1978, Robertson swore under oath that he did not notify the police the MG was missing or stolen until November, 1971. At trial, Robertson claimed that his sworn statement was wrong, and that the above date was correct. Nevertheless, Robertson took over two months to report the MG missing or stolen to the police.

where the evidence leads to but one conclusion and the trial court has reached the opposite conclusion that the decision of the trial court will be disturbed as being contrary to law. *Forth, supra.*

■ Robertson poses that the mechanic's lien foreclosure sale (lien sale) of July 30, 1971, could not have taken place because the MG had already been sold by McClelland to Welch on May 3, 1971. Therefore, Robertson argues, the mechanic's lien foreclosure sale by McClelland was invalid. In so arguing, Robertson does not refute or raise as an issue McClelland's claim to a lien on the MG. Welch, then the secretary–treasurer of Butler, testified that she purchased the MG for scrap on May 3, 1971. Later, she decided to restore the MG and sought its title. Subsequently, McClelland resold the MG to Butler pursuant to the lien statute in order to transfer the title to the MG. Robertson offers no authority, either statutory or case law, to support an argument against McClelland's reselling the MG pursuant to the lien statute's requirements. Furthermore, we are unaware of any such authority, and therefore, uphold McClelland's second sale to Butler.[2]

In simplified form, the relevant requirements of Ind.Code 9–9–5–6 to foreclose on a lien by public sale are:

1) A garageman who performs labor, furnishes materials and storage, or does repair work on a motor vehicle at the owner's request has a lien on the motor vehicle to the reasonable value of the charges;

2) if the charges are left unpaid and the motor vehicle is not claimed within thirty days from the date the lienholder took possession, the lienholder may advertise the motor vehicle for sale and sell it after two advertisements, once each week, in a local newspaper;

3) the advertisement shall describe the motor vehicle, and state the amount of unpaid charges;

4) the lienholder shall notify the owner at his last known address, by registered mail, that such motor vehicle will be sold at public auction to satisfy the lien within fifteen days after such notice is mailed;

5) if the owner of the motor vehicle does not claim the motor vehicle and satisfy the lien, the motor vehicle may be sold at public auction; and

6) the lienholder, following the sale, is to give the purchaser a sales certificate setting forth the license number and certificate of title, if known, of the former owner, and also give a publisher's affidavit indicating that a newspaper advertisement was properly placed.

The record shows that on July 30, 1971, the MG was resold in the following manner:

1) The MG was brought to McClelland for repairs by Robertson;

2) McClelland, after possessing the MG for more than thirty days, acquired a lien on it for the reasonable value of the charges for such labor, materials, storage and repairs;

3) the MG was left by Robertson unclaimed for over thirty days without payment of charges;[3]

4) McClelland then placed two advertisements in a local newspaper, once each week, for the public sale of the MG;

5) the advertisement described the MG, and the amount of unpaid charges;

6) the lienholder notified Robertson by way of Butler's letter on July 14, 1971, sent to his last known address, by registered mail, that the MG would be sold at public auction on July 30, 1971, to satisfy the lien;

7) Robertson never claimed the MG thereafter, nor did he satisfy the lien;

8) McClelland sold the MG at public auction on July 30, 1971, to Butler for $300.00;

9) McClelland made out a sales certificate to Butler which set forth Robertson's

---

**2.** As is set out in the statement of facts, Welch, herself, actually purchased the MG, but had the authority by Butler to purchase vehicles for Butler.

**3.** Actually, Robertson left the MG for two years without inquiring as to unpaid charges.

name and street address, the date McClelland received the MG into his custody, and the amount of the unpaid charges; and

10) a notarized sales certificate was presented to the Secretary of State accompanied with a proper application by Butler for a new certificate of title.

Obviously, McClelland's lien for $1,484.04 was not satisfied by the public sale which left him with $1,184.04 of unpaid charges on the MG.

Robertson argues that Butler sent Robertson notice rather than McClelland, the lienholder, as the statute requires. After our careful consideration of the lien statute's purpose, we cannot agree with Robertson. Though the statute requires the lienholder to send notice to the owner, it makes no difference in terms of the purpose of the notice requirement whether McClelland or Butler, under McClelland's instruction, sent notice to Robertson. As long as the owner is sent notice, the lienholder has complied with this part of the notice provision in the lien statute. The record clearly shows that notice was sent by registered mail to the last known address of Robertson within fifteen days precedent to the public sale.

Under the lien statute, the garageman–lienholder shall obtain the name and address of the owner of every motor vehicle which is left in his custody for repairs, supplies, or storage. The lien statute instructs that "the lienholder shall notify the owner at his *last known address*, by registered mail, that such motor vehicle . . . will be sold at public auction to satisfy the lien thereon[.]" Should the owner move, the burden falls on the owner to notify the lienholder of his new address in order to protect his interest in the vehicle. The lienholder is only statutorily obligated to notify the owner at his last known address and is not expected to find out where the owner has moved. Robertson testified that he had moved from Florida to Michigan and knew McClelland was unaware that he had moved.

The lien statute is a self–help remedy for garagemen who hold unsatisfied liens. The "primary purpose [of the lien statute] is to provide a method of transferring the title to the automobiles which are sold in satisfaction of liens[.]" *Snyder v. State*, (1934) 206 Ind. 202 at 204, 188 N.E. 777. The statute is declaratory of the common law artisan's lien, and provides the garageman with additional remedies. *Grusin v. Stutz Motor Car Company of America*, (1933) 206 Ind. 296, 187 N.E. 382. Because lay persons are responsible for bringing into play this statutory remedy, certain minor irregularities may appear. However, in the case at bar, the statutory requirements were met. The record shows that personal notice was mailed to Robertson and a public auction was held all pursuant to the lien statute. The fact that the public sale amounted to a second sale does not invalidate or fault it.

Robertson argues that McClelland was a mere bailee, and thus the public sale by McClelland to Butler amounted to tortious conversion. Robertson cites *Monarch Buick Company v. Kennedy*, (1965) 138 Ind. App. 1, 209 N.E.2d 922, in support of such a proposition. Monarch was a case where a new car owner returned the new car to the original dealer for repair, and the dealer falsely notified a third party that the vehicle was abandoned. In the case at bar, the MG was brought to McClelland by Robertson for repair. Robertson virtually disappeared for two years without making any payments on accrued and accruing charges for repair, labor, storage, and materials. The lien statute permits a garageman to foreclose on his lien under these circumstances. McClelland complied with the lien statute in selling the MG at public auction. Tortious conversion does not exist here. In light of the standard of review cited above, we cannot deduce that the evidence leads to but one conclusion which is opposite to the trial court's conclusion, and therefore, we will not disturb the judgment.

Insofar as we hold that the mechanic's lien foreclosure sale was valid, Robertson's arguments, numbered III, IV, and V covering laches, the statute of limitations and estoppel or waiver, need not be addressed.

Mattingly holds a valid title to the MG. Further, upon the Bureau of Motor Vehicle's issuance of a certificate of title in the MG to Mattingly, he became the rightful owner.

Judgment affirmed.

ROBERTSON, P. J., and RATLIFF, J., concur.