**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 28 2013, 7:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID S. PEEBLES**
Harris, Harvey, Peebles & Thompson, LLC
Crawfordsville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN P. SCHAUB, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 54A01-1301-PL-11 |
| | ) | |
| THE ESTATE OF EDWARD G. SCHAUB and | ) | |
| DAVID SCHAUB, Personal Representative, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE MONTGOMERY SUPERIOR COURT
The Honorable Peggy Q. Lohorn, Judge
Cause No. 54D02-1105-PL-436

**June 28, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

John P. and David Schaub are half-brothers who share the same biological father – Edward G. Schaub. Their father died in late 2005, leaving, among other things, a 1997 Coachman Maxxum 5th wheel travel trailer (the trailer). The underlying lawsuit was initiated by a complaint for replevin concerning that trailer filed under Ind. Code Ann. § 32-35-2 *et seq.* (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013) (the Replevin Statute) by David in his capacity as personal representative of Edward's estate (the Estate). As a result of the lawsuit, John was ordered to pay $12,000 to the Estate as damages for wrongful detention of the trailer. John appeals from that order.

We reverse.

The facts favorable to the judgment are that Edward, a Florida resident, died in Florida on November 3, 2005. At the time of his death, Edward had lived in the trailer with David's mother for at least ten years. On January 18, 2006, John was appointed personal representative of his father's estate. All parties seemed to agree that the intention was to sell the trailer. In order to eliminate logistical impediments to doing so, John moved the trailer from Florida, which had been Edward's state of residence, to John's property in Montgomery County, Indiana. On September 14, 2006, John filed an inventory of Edward's estate listing the estimated fair market value of the trailer to be $15,000. The estimation was based upon a combination of John's Internet research and the amount Edward had at some point during his lifetime indicated he would accept from another son – Tom – who apparently was interested in purchasing the trailer. That sale was never completed. In November 2007, John advertised the trailer in a classified ad in *Trader* magazine, with the list price as "$15,000

2

obo." *Exhibit Binder*, Plaintiff's Exhibit 3.[1]  There is evidence that this was John's only attempt to liquidate the trailer while it was in his possession.

On July 23, 2009, the Orange County Circuit Court in Florida issued an order to show cause to John and to Roger Albright, attorney for the Estate.  The order directed them to appear and show cause why they failed to file and serve a petition for discharge and final accounting by the deadline imposed by the Florida court.  Both John and Albright failed to appear for the September 2 hearing.  Accordingly, on November 12, 2009, the Florida court issued an "Order Removing Personal Representative and Revoking Letters of Administration [and] Appointing Successor Personal Representative."  *Id*., Plaintiff's Exhibit 7.  In it, the court removed John as personal representative of the Estate and appointed David as his replacement.  The court also retained jurisdiction "to impose such sanctions and/or surcharge as may be appropriate against [John and Albright] for failure to diligently probate this Estate, failure to comply with order of this Court, and maladministration of the Estate."  *Id*.

Terry Brooks, a Florida attorney, was appointed as successor attorney for the Estate.  On December 21, 2009, Brooks sent a letter notifying John that David would be contacting John about surrendering possession of the trailer to David within thirty days.  Brooks also asked John to furnish Brooks with the certificate of title for the trailer.  David thereafter attempted approximately seven times to contact John through emails and phone calls, but was not successful.  John never responded to David's emails or voice mails.

---

[1]  The title affixed to this unpaginated volume of the transcript is actually "Table of Contents."  Although it does contain a table of contents for the trial transcript, it also contains an exhibit index, as well as all of the exhibits offered at trial.  We therefore have designated it as the "Exhibit Binder" for the sake of clarity.

On May 31, 2011, David, on behalf of the Estate, filed a complaint for replevin in Montgomery Superior Court #2 seeking return of the trailer, which sat unused on John's property from the time it was moved there in 2006 until the replevin action was filed in the early summer of 2011. The Estate also sought damages resulting from John's wrongful possession of the trailer. On August 3, 2011, the parties executed an agreed entry apparently resolving the issue of possession. The matter of "potential damages" however, remained unresolved. *Transcript* at 4. A trial was conducted on September 5, 2012 on the issue of damages. Both David and John appeared and offered evidence at trial. At the conclusion of trial, the court issued findings and conclusions awarding damages against John and in favor of the Estate in the amount of $12,000, which represented the amount the trailer had diminished in value while in John's possession. John appeals the damages award. Further facts will be provided where relevant.

We note that the Estate did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.,* 966 N.E.2d 143 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248, *trans. denied*. In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.*

John appeals from a judgment accompanied by findings of fact and conclusions of law. Pursuant to Indiana Trial Rule 52(A), "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly

4

erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court's judgment is accompanied by specific findings and conclusions, we apply a two-tiered standard of review. *Millikan v. Eifrid,* 968 N.E.2d 243 (Ind. Ct. App. 2012). We construe the findings liberally in support of the judgment and first consider whether the evidence supports those findings. *Id.* Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we must determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* We will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* In performing this review, we do not reweigh the evidence and consider only the evidence favorable to the trial court's judgment. *Id.*

"A replevin action is a speedy statutory remedy designed to allow one to recover possession of property wrongfully held or detained as well as any damages incidental to the detention." *Dawson v. Fifth Third Bank*, 965 N.E.2d 730, 735 (Ind. Ct. App. 2012) (quoting *United Farm Family Mut. Ins. Co. v. Michalski,* 814 N.E.2d 1060, 1066 (Ind. Ct. App. 2004)). This appeal does not focus upon the Estate's right to possess the trailer, but rather upon the trial court's award of $12,000 in damages to the Estate pursuant to I.C. § 32-35-2-33(2) (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013) (authorizing an award of damages for detention of the property), and I.C. § 32-35-2-35 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013)

(assigning to the fact-finder the task of assessing the damages for the detention of the property). As John aptly points out, a replevin action is premised upon the fact that possession of the personal property in question was wrongful. *See* I.C. § 32-35-2-1 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). He contends this condition was not established in the present case. We conclude that it was, but that the judgment is flawed for related, but different, reasons.

We first address the threshold question of whether possession must be "wrongful" in order to be actionable under the Replevin Statute and, by extension, to justify an award of damages. This requires an inquiry into the meaning of the statute. Our initial task in interpreting a statute involves determining "whether the Legislature has spoken clearly and unambiguously on the point in question." *City of N. Vernon v. Jennings Nw. Reg'l Utils.*, 829 N.E.2d 1, 4 (Ind. 2005). "When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. … Clear and unambiguous statutes leave no room for judicial construction." *Id.*

Must possession be wrongful to justify an award of damages under the Replevin Statute? We conclude that the language of the statute answers this question resoundingly in the affirmative. I.C. § 32-35-2-1 provides, "[i]f any personal goods, including tangible personal property constituting or representing choses in action, are … (1) *wrongfully* taken or *unlawfully* detained from the owner or person claiming possession of the property … the owner or claimant may bring an action for the possession of the property." (Emphasis

supplied.)  As indicated above, in a replevin action, a court is authorized to award not only possession, but also damages.  *See* I.C. § 32-35-2-33(2).

The next question is whether John's possession of the trailer was "wrongful" within the meaning of I.C. § 32-35-2-1 for any or all of the period from the time he moved the trailer to Indiana in 2006 until approximately May 2011, when he transferred possession to the Estate following the filing of the replevin action.  Although the Replevin Statute does not define the term "wrongful", we discern no reason from context or otherwise to ascribe to it anything other than its ordinary meaning, i.e., "having no legal claim."  Merriam Webster's Online Dictionary, *available at* http://www.merriam-webster.com/dictionary/dictionary (last visited on June 5, 2013).

Indisputably, John's possession initially was not wrongful.  Indeed, it was John's duty as personal administrator of his father's estate to take possession of his father's assets and property for the purpose of paying his father's debts and then distributing whatever property remained pursuant to Edward's will or the applicable statute of intestate succession.  Thus, with respect to that period of time, i.e., while his possession of the trailer was not "wrongful", the Estate could not recover damages for his continued possession.  One problem presented in this case is, when did the period of wrongful possession commence? It can be argued that his possession became wrongful no later than July 23, 2009, which was when the Florida court issued a show-cause order directing John to explain and justify the fact that he had not yet concluded the affairs of his father's estate, which included liquidating the trailer.  Or, perhaps it could be deemed to have become wrongful on November 12, 2009,

7

which was the date of the Florida court's "Order Removing Personal Representative and Revoking Letters of Administration Appointing Successor Personal Representative." *Exhibit Binder*, Plaintiff's Exhibit 7. Certainly, his possession was wrongful by or about December 21, 2009, the date of the letter from replacement counsel for the Estate, which informed John that David would be contacting him to arrange delivery of the trailer into the Estate's possession. In any event, we can find no basis in the evidence to pinpoint a date, or even an approximate time-frame, earlier than July 23, 2009 on which his possession of the trailer transformed from legal to wrongful.

In the end, however, it does not matter which of the above three dates is chosen. Indeed, any date other than the date of initial possession suffers the same fatal flaw; there is no evidence concerning the value of the trailer on that date. We have held that the Replevin Statute authorizes an award of damages only for damage (in this case, diminution of the value of the trailer) that is attributable to the period of wrongful possession. In order to accurately determine that amount, the court would need evidence relative to the value of the property at the time wrongful possession commenced, which would then be compared to the value of the property at the time possession was surrendered to the party seeking replevin. *See* I.C. § 32-35-2-35. The difference between those two amounts, assuming a decrease in the value, would be the measure of damages available under I.C. § 32-35-2-33(2).

In the present case, the court determined the value of the trailer at the time possession commenced to be $15,000. This assessment was based largely, and perhaps exclusively, upon an inventory of Edward's estate filed by John on September 14, 2006, pursuant to his

8

duties as personal representative. John's assessment, in turn, was based in part upon his own Internet research and in part upon the fact that Edward had negotiated with a third son about that son purchasing the trailer. John was aware that Edward had been willing to take $11,000 for the trailer at that earlier time, although that sale ultimately did not materialize. With respect to the $15,000 asking price in the *Trader* ad, John testified that he "just threw it out there to see if we could get a bite on it," *Transcript* at 28, and that he "intentionally went high on it, figuring there'd be some wiggle room if somebody made an offer." *Id.* at 31. Scant though it may be, this was nonetheless evidence to support the trial court's finding that the initial value of the trailer was $15,000. The only other evidence concerning the trailer's value related to the trailer's value at the time possession was surrendered to the Estate in June 2011. That amount was $3000. The low appraisal was based in part upon its general condition, and in part upon the fact that the refrigerator and air conditioner were determined to be not functioning at that time. The difference between the two amounts – $12,000 – represented the trial court's award of damages.

The fatal flaw in the trial court's award of damages is that the initial figure represents the value of the trailer when John first took possession, which we reiterate was lawful possession. The trial court did not determine a date on which John's possession of the trailer became wrongful. Even if it had, and even if this court could choose a date from among the possible alternatives identified above, there is no evidence in the record from which we may determine the value of the trailer at *that* time, i.e., the time when possession commenced to be wrongful.

It is well established that the plaintiff in a replevin action bears the burden of proof in proving the elements of a replevin claim. *See Robertson v. Mattingly*, 413 N.E.2d 647 (Ind. Ct. App. 1980). This includes the claim for damages in the Estate's replevin action. The Estate presented no evidence relative to the value of the trailer on the date that John's possession became wrongful. It may very well be that the value of the trailer on that date was less than $15,000, perhaps much less. In any event, the Estate failed in its burden of proof as to this element. John has established a prima facie case of error, and therefore the damage award is reversed.

Judgment reversed.

ROBB, C.J., and CRONE, J., concur.